Mildred MARTIN, Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

No. 78-2789.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 2, 1980.

Decided May 11, 1981.

---

John F. Cordes, Asst. U. S. Atty., Los Angeles, Cal., for defendant-appellant.

David Silverton, Los Angeles, Cal., for plaintiff-appellee.

Before HUG and FERGUSON, Circuit Judges, and EAST,* District Judge.

* Honorable William G. East, Senior United States District Judge, for the District of Ore-

HUG, Circuit Judge:

Plaintiff Mildred Martin brought this action under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b), for injuries she sustained when a bath tub downspout broke in the house her mother had recently purchased from a government agency. The Government appeals on evidentiary grounds, and on the ground that the FTCA is inapplicable to a cause of action founded in a breach of contract. We affirm.

## I

Mrs. Martin's mother purchased a house which had been repossessed by the Veterans Administration (VA). The VA, before putting the house on the market, hired a property manager to prepare it for sale. He inspected it and recommended certain repairs be made. The VA approved those repairs, but because of fear of vandalism, required that the purchaser occupy the house before the repair work would begin. The house was occupied on April 28, 1975, and the repairs agreed upon were underway and nearly completed before April 30, 1975. Additional repairs recommended by the plumbing contractor were underway during early May, 1975.

On May 7, 1975, Mrs. Martin tripped and fell while entering the bathtub. As she fell, she grabbed at the tub's porcelain downspout; it shattered, causing serious injury to her hand. She brought suit in the district court, alleging the tortious breach of a contractual duty to repair the premises and make them habitable and seeking damages in excess of $10,000. The district court entered judgment for Mrs. Martin and awarded damages in the amount of $35,000.

The principal questions raised on appeal are whether the district court: (1) erred in using parol evidence to find that a contractual duty on the part of the Government did exist; and (2) erred in finding jurisdiction and awarding damages in excess of

gon, sitting by designation.

$10,000 under the FTCA in a case grounded on the tortious breach of a contractual duty.

## II

## PAROL EVIDENCE

The determination of the district court that the contract is "uncertain enough on its face to allow parol evidence" is a conclusion of law freely reviewable by this court. *United States ex rel. Union Building Materials Corp. v. Haas & Haynie Corp.*, 577 F.2d 568, 572 (9th Cir. 1978). The relevant portion of the plumbing repair schedule reads as follows:

"LAV: Install 2 single faucets, trap arm, 2 angle stops, supply tubes, P.O. plug

"WATER CLOSET: Install a ballcock, tank bell, lift wires

"TUB: Rewasher tub faucet and install a shower head and arm

"LAV # 2: Install 2 single faucets, trap arm, 2 angle stops and supply tubes, P.O. plug

"WATER CLOSET # 2: Install a BT # B515 toilet 14″ rough, seat, angle stop and supply tube."

Martin's cause of action under the FTCA rests upon the existence of a duty of care owed by the Government to Martin and arising out of a contract to repair the bathtub spout and other plumbing fixtures. It is therefore crucial to understand just what was to be repaired.

The cryptic form of the repair schedule requires interpretation of ambiguous terms and abbreviations. Additional ambiguity lies in the use of "LAV" and "LAV # 2" as labels for the bathrooms and for the wash basins. The downstairs bathroom had a single spout system in the basin, whereby hot and cold water mixed together and flowed out one opening. The upstairs had an older-type double-faucet system where hot and cold water flowed from individual spouts. Thus, it would be very reasonable, standing in the "LAV" (the room) and seeing a single-spout fixture in the "LAV" (the basin), to understand the "2 single faucets" listed on the repair order to mean a replacement for the basin fixture and another "single faucet" in the only other logical place: the bathtub. The similarity in language for LAV # 2 is explained by the need to replace the two individual taps in the basin there. The Government's contention is that the repairs opposite "LAV" refer only to the basin in that room.

Because the meaning of the terms on the repair list can be construed reasonably in more than one way, and because a meeting of minds would almost certainly require some explanation, most likely including a tour of the rooms with an on-the-spot description of the work to be done, we find the contract was ambiguous as to the scope of the plumbing repairs to be done by the Government. In this situation, then, it was proper for the district court to admit extrinsic evidence for the purpose of clarifying the terms of the repair agreement.

Interpretation of an ambiguous contract presents a mixed question of fact and law. *Libby, McNeill and Libby v. City National Bank*, 592 F.2d 504, 512 (9th Cir. 1978). The district court has made some determinations on the circumstances surrounding the contractual agreement. Those determinations are findings of fact and are reviewed using the clearly erroneous standard. The district court has also interpreted the meaning of the words of the contract in light of the surrounding circumstances. This presents a question of law freely reviewable by this court. *See Kittitas Reclamation Dist. v. Sunnyside Valley Irr. Dist.*, 626 F.2d 95, 98 (9th Cir. 1980).

After hearing the extrinsic evidence, the district court determined that the spout was cracked and discolored before the accident; that Mrs. Martin and her mother believed it to be included on the repair list and expected it to be replaced; and that the Government's behavior in replacing the spout at its own expense after the accident indicated that it believed itself obligated to do so. As a result of these reasonable determinations, the district court interpreted the contract to include an obligation to repair the tub spout. We find no error in that interpretation.

## III

## THE FEDERAL TORT CLAIMS ACT

■ The Government's assignment of error here is two-fold: (1) the present claim is contractual in nature; therefore, the FTCA does not provide jurisdiction in the district court; and (2) even if the claim were to be examined under the FTCA, the claim is not a tort under California law.

### A. THE NATURE OF THE CLAIM

The Government contends that the claim against it sounds in contract. It points out the Tucker Act provides the district court with jurisdiction only for claims in contract not exceeding $10,000. Thus, it argues that this case action could have been brought only in the Court of Claims because damages in excess of $10,000 were sought. In support of this position, the Government first cites cases that discuss the legislative intent to limit the FTCA to "ordinary common-law torts," *Dalehite v. United States*, 346 U.S. 15, 28, 73 S.Ct. 956, 964, 97 L.Ed. 1427 (1953), and not "to visit the Government with novel and unprecedented liabilities." *Feres v. United States*, 340 U.S. 135, 142, 71 S.Ct. 153, 157, 95 L.Ed. 152 (1950), quoted in *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 671, 97 S.Ct. 2054, 2057, 52 L.Ed.2d 665 (1977). While the Government has accurately represented the import of those cases, it inaccurately uses them to conclude that the FTCA was improperly applied in the present situation. The Supreme Court's concern there was only that the United States' waiver of immunity be limited to liability for claims grounded in a negligent act leading to a traditional tort. *Dalehite* involved an absolute liability claim stemming from an ultrahazardous activity, and *Feres* and *Stencel Aero* concerned injuries to military personnel. The special problems present in those areas are not relevant here.

The Government also relies on *Woodbury v. United States*, 313 F.2d 291 (9th Cir. 1963) to dispose of the question of the FTCA's applicability to situations involving the breach of a contractual duty. The significant passage in *Woodbury* reads:

Many breaches of contract can also be treated as torts. But in cases such as this, where the "tort" complained of is based entirely upon breach by the government of a promise made by it in a contract, so that the claim is in substance a breach of contract claim, and only incidentally and conceptually also a tort claim, we do not think that the common law or local state law right to "waive the breach and sue in tort" brings the case within the Federal Tort Claims Act.

313 F.2d at 295. The factual circumstances of *Woodbury*, however, are readily distinguishable from the case at hand. The cause of action in *Woodbury* was based on the breach of the Government's fiduciary duty arising out of a contract to arrange long term financing for a home builder. The result of the alleged tortious breach was severe economic harm to the builder.

The other cases the Government cites for the same principle are all similarly contractual in nature, and allege the same type of economic damages.[1] While the Government would have us place this case in the same category, we feel it is more accurately characterized as analogous to *Aleutco Corp. v. United States*, 244 F.2d 674 (3d Cir. 1957).

In *Aleutco*, the purchaser of surplus materials from the Government brought suit for conversion when the Navy refused to release the goods. Because an essential element of conversion is ownership, and because *Aleutco* showed ownership by way of a sales contract, the cause of action had its

1. *Putnam Mills Corp. v. United States*, 432 F.2d 553 (2d Cir. 1970) (alleging Small Business Administration was escrowee for benefit of subcontractor to insure payment for materials supplied); *Blanchard v. St. Paul Fire & Marine Ins. Co.*, 341 F.2d 351 (5th Cir.), *cert. denied*, 382 U.S. 829, 86 S.Ct. 66, 15 L.Ed.2d 73 (1965) (alleged the government interfered with contractor's performance then improperly terminated the contract); *Barnett v. United States*, 397 F.Supp. 631 (D.S.C.1975) (alleged breach of contract to buy peaches); *Archilla v. Administrator of Veterans Affairs*, 366 F.Supp. 45 (D.P.R.1973) (failure to deliver clear title to the property object of a purchase mortgage).

basis in contract. However, as the Third Circuit noted, conversion is a classic case in tort: to deny jurisdiction in the district court merely because one element of the case is based on a contractual relationship would not further the statutory distinction made between those cases to be brought in the Court of Claims and those to be brought in the district court. *See id.*, 244 F.2d at 679.

In *Woodbury*, this court distinguished *Aleutco* as a case essentially sounding in tort with the breach of contract merely background for the tort, while in *Woodbury* the claim for breach of a fiduciary duty was characterized as essentially sounding in contract. *Woodbury*, 313 F.2d at 296. That same distinction applies here. The tort alleged here arises from an unsafe condition leading to a personal injury. It is a classic tort. *See* Prosser, Law of Torts, at 621 (4th Ed. 1971). If the claim arising out of the breach of contract were for expectation damages, *i. e.*, asking for the installation of a good spout, it would be more characteristic of a contractual action. However, this is a personal injury action arising from breach of a duty of care arising out of a contract. It would be improper to limit the plaintiff to a purely contract remedy. The cases that require such a limitation (set out in footnote 1) involve breaches in commercial relationships leading to loss of profit or other purely economic harm. Here Mrs. Martin's complaint seeks damages for her personal injury from the negligent repair of a house and we see no reason under these circumstances to deny her the forum of the district court for her claim in tort. *See Aleutco*, 244 F.2d at 678–79. Therefore, we find that the district court properly heard this case under jurisdiction granted by the Federal Tort Claims Act, 28 U.S.C. § 1346(b).

B. *THE EXISTENCE OF A TORT UNDER CALIFORNIA LAW*

◼ The FTCA provides that the Government's liability be determined as if it were a private person subject to the law of the place where the act or omission occurred. The Government contends that the events, in this case, would not give rise to tort liability under California law. It argues first that under California law a vendor of real estate is not liable to a vendee or third party who is injured by an unsafe condition after taking possession of the property. In this case, however, the Government required occupancy by the purchasing family as a precondition to the repair work it had agreed to perform.

◼ The Government also argues that nonfeasance, as opposed to misfeasance, is not ordinarily actionable; therefore, because the Government simply failed to repair the tub spout, and did not actively repair it improperly, it has no responsibility for injuries proximately caused by its inaction. However, the Government's duty must be viewed more broadly. It undertook an obligation to repair the house and required occupancy before the repairs were complete. The replacing of the spout was only a small part of its duty to repair. Workmen had been in and out of the house for several days, and the repair work was virtually completed at the time of Mrs. Martin's injury. Thus, this is not a case of nonfeasance; performance was undertaken in accordance with the conditions demanded by the Government. The Government obligated itself to repair inoperable or damaged plumbing fixtures, and the finding of the district court that the Government was negligent in failing to replace the spout was not error.

We AFFIRM.

FERGUSON, Circuit Judge, dissenting:

With respect and regret, I am compelled to dissent from part III A of the opinion and the result reached by the majority. The district courts do not have jurisdiction over contract claims against the United States when the amount of the claim exceeds $10,000. Because Ninth Circuit precedent requires that plaintiff's claim be characterized as contractual, and because that claim is in excess of $10,000, I would remand this case to the district court so that it could be dismissed for lack of jurisdiction.

Contract claims against the United States are controlled by the Tucker Act, 28 U.S.C. § 1491. The district courts and the Court of Claims have concurrent jurisdiction over Tucker Act claims. 28 U.S.C. § 1346(a)(2). Where a claim is for an amount in excess of $10,000, however, the Court of Claims has exclusive jurisdiction. *See id.*; 28 U.S.C. § 1491. Tort claims against the United States are controlled by the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.* District courts have exclusive jurisdiction over FTCA suits. 28 U.S.C. § 1346(b). Because plaintiff alleges damages in excess of $10,000, if her claim is contractual, only the Court of Claims has authority to entertain it.

Plaintiff concedes that the United States' duty toward her is a contractual duty. She contends, however, that the breach of this duty—failure to replace a faucet—permits her to elect an action in either contract or tort. This court has considered such an argument in the past and attempted to distinguish those cases which are essentially contractual, and therefore governed by the Tucker Act, from those that sound in tort, and are therefore governed by the FTCA. *Woodbury v. United States*, 313 F.2d 291 (9th Cir. 1963).

*Woodbury* established that an action characterized as arising from a tort was, for the limited purpose of determining whether the FTCA or Tucker Act applied, essentially a contract action if government liability is predicated on: "(1) an express or implied promise by the government ... and (2) a wrongful breach of that promise." *Id.*, at 296. In the instant case, plaintiff predicates the United States' liability on (1) an alleged promise by the Veterans Administration to replace a faucet, and (2) the breach of that promise. Plaintiff does not contend that the Veterans Administration had an independent duty to replace the faucet. Rather, plaintiff argues and the majority agrees, that the Veterans Administration's sole obligation arose from the promise to replace. Under our decision in *Woodbury*, when a cause of action is founded solely upon the breach of an obligation created by contract, suit can be brought only according to the dictates of the Tucker Act. *Id.* Accordingly, because plaintiff's claimed damages are in excess of $10,000, only the Court of Claims could exercise jurisdiction over the instant case.

The majority attempts to avoid the result mandated by *Woodbury* and the jurisdictional section of the Tucker Act. First, it distinguishes *Woodbury* by pointing out that the plaintiff there suffered only economic harm, while in the instant case, the plaintiff has suffered a physical injury.[1] Nothing in *Woodbury*, suggests such a distinction. *Woodbury* focused on the source of the government's obligation to the injured party, not on the nature of the harm suffered:

> [W]here ... the action is essentially for breach of a contractual undertaking, and the liability, if any, depends wholly upon the government's alleged promise, the action must be under the Tucker Act, and cannot be under the Federal Tort Claims Act.

Second, the majority likens the instant situation to the factual setting of a Third Circuit case in which suit under the FTCA was permitted. That case, *Aleutco Corp. v. United States*, 244 F.2d 674 (3d Cir. 1957), was distinguished in *Woodbury*:

> [T]he contract [in *Aleutco*] was not the essential basis of the claim—rather, it came into the case as a claimed defense on behalf of the government, which asserted that plaintiff, by breach of contractual arrangements with the government, had forfeited its right to the property.

*Woodbury, supra*, at 296–97. In the instant case, the breach of contract is the sole basis for plaintiff's claim. Accordingly, *Aleutco* provides no authority for holding that suit under the FTCA was proper.

1. The majority relies on *Aleutco Corp. v. United States*, 244 F.2d 674 (3d Cir. 1957), as a case analogous to the instant case in which suit under the FTCA was permitted. But *Aleutco*, like *Woodbury*, involved only financial injuries.

I would vacate the judgment of the district court and remand so that the case could be dismissed.