**FORT VANCOUVER PLYWOOD CO., a Washington corporation, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 83–4143.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 6, 1984.

Decided Nov. 14, 1984.

548

Jeffrey M. Batchelor, Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland, Or., for plaintiff-appellant.

Anastasia Dritshulas, Asst. U.S. Atty., Seattle, Wash., for defendant-appellee.

Before ANDERSON, SKOPIL and BOO-CHEVER, Circuit Judges.

SKOPIL, Circuit Judge:

## FACTS AND PROCEEDINGS BELOW

In 1977 the Fort Vancouver Plywood Company ("Fort Vancouver") entered into a timber sales contract with the United States Forest Service. After most of the timber was cut and bucked, but before it was removed, it was destroyed by fire as it lay on the ground.

The fire began on a site adjacent to the site where Fort Vancouver was operating. The Forest Service was conducting a slash burn on the adjacent site. The fire swept through Fort Vancouver's sale, destroying both cut and standing timber.

In September 1981 Fort Vancouver submitted a claim for loss of the timber to the Forest Service pursuant to the Federal Tort Claims Act ("FTCA") and accompanying regulations. The Forest Service did not respond to the claim.[1]

In September 1982 Fort Vancouver filed a complaint against the United States in the district court. Fort Vancouver alleged that the government had negligently started and maintained the fire. On June 23, 1983 Fort Vancouver filed a motion for partial summary judgment contending that appellee's defenses were legally insufficient. The government filed a cross motion for summary judgment and, in the alternative, a motion to dismiss on the ground that the district court lacked jurisdiction. The government also filed a motion to dismiss on the ground that Fort Vancouver had failed to state a claim upon which relief could be granted. The district court ruled that "[p]laintiff's claim has its basis in contract" and dismissed for lack of subject matter jurisdiction. The district court did not reach the question of whether Fort Vancouver had failed to state a claim.

Fort Vancouver appeals.

## DISCUSSION

### 1. Jurisdiction.

A. Standard of Review

■ This court reviews *de novo* a district court's determination that it is without subject matter jurisdiction. *Clayton v. Republic Airlines, Inc.,* 716 F.2d 729, 730 (9th Cir.1983).

B. Merits

■ The district courts have no jurisdiction over contract claims exceeding $10,-000. 28 U.S.C. § 1346(a)(2). Fort Vancouver argues that its action is in tort, not contract. On its face the complaint does allege negligence and not breach of contract. Fort Vancouver does not allege that the government's liability arises from its contract obligations. It alleges that the government is liable under Washington tort law. *See* 28 U.S.C. § 1346(b) (district court has jurisdiction over tort claims against government for injury to property if private person would be liable under law of place where act or omission occurred). Fort Vancouver acknowledges that the timber sale contract is implicated, but argues that the contract only establishes Fort Vancouver's property interest in the timber which was allegedly invaded by the government's negligent actions. For purposes of jurisdiction under the FTCA, Fort Vancouver argues that a court must focus on the theory and source of liability, not the source of the interest harmed.

A series of cases involving this issue supports Fort Vancouver. The seminal case is *Aleutco Corporation v. United States,* 244 F.2d 674 (3d Cir.1957). Aleutco Corporation ("Aleutco") had purchased surplus war materials on a contract which required removal of the goods by a particu-

---

[1] Failure by the agency to act within 6 months satisfied the exhaustion prerequisite to a district court action. 28 U.S.C. § 2675(a).

lar date. Some of the goods were not timely removed. There was evidence that Aleutco had received informal assurances that it could delay removal of the goods. When Aleutco attempted to claim the goods, the government refused and instead shipped the goods to another location and sold them to a third party. Aleutco prevailed in an action under the Federal Tort Claims Act for the tort of conversion. The government appealed, arguing that the district court was without jurisdiction. It claimed that Aleutco Corporation's action was in contract, not tort, and therefore should have been before the Court of Claims. Affirming, the Third Circuit said:

> In deciding whether the action is one in tort, the nature of the complaint against the United States must be determined ... The fact that the claimant and the United States were in a contractual relationship does not convert an otherwise tortious claim into one in contract .... Aleutco's complaint is a sufficient statement of a cause in tort for conversion, and it would seem that Aleutco could have equally well made out a complaint for breach of contract ... [T]here is no policy in the law which requires that the forum of the district court be denied a plaintiff who pleads and proves a classic case in tort....

*Id.* at 678–79.

This court was confronted with a similar issue in *Woodbury v. United States*, 313 F.2d 291 (9th Cir.1963). In *Woodbury*, a land developer brought an action in district court in connection with a failed housing development, alleging that a government housing agency had violated a fiduciary duty owed to the plaintiff developer. On appeal, we rejected the appellant's argument that his breach of fiduciary duty claim constituted a tort:

> Many breaches of contract can also be treated as torts. But in cases such as this,—**where the "tort" complained of is based entirely upon a breach by the government of a promise made by it in a contract,** so that the claim is in substance a breach of contract claim, and only incidentally and conceptually also a

tort claim, we do not think that ... brings the case within the Federal Tort Claims Act.

> \*    \*    \*    \*    \*    \*

> We only hold that where, as in this case, the action is essentially for breach of a contractual undertaking, **and the liability ... depends wholly upon the government's alleged promise,** the action ... cannot be under the Federal Tort Claims Act.

> \*    \*    \*    \*    \*    \*

> [W]e do not think that [*Aleutco*] is really contrary to our views. It was an action for conversion of property—"a classic tort"—as the court stated. We think that in *Aleutco* the action was essentially one sounding in tort, while here the action is one essentially sounding in contract. There, the breach of contract ... was a mere background for the tort....

*Id.* at 294–96 (emphasis added).

In *United States v. Peter Kiewit Sons' Co.*, 345 F.2d 879 (8th Cir.1965), a contractor leased equipment and an operator to the federal government. The equipment was damaged while in use by the Army Corps of Engineers. The contractor brought an action under the FTCA alleging that the damage was the result of negligent supervision by a government employee. The district court entered judgment for the contractor and the government appealed, arguing that the district court was without jurisdiction. The Eighth Circuit reversed. The contract between Kiewit and the government specifically allocated responsibility for negligent actions and resulting damages. The contract also contained a "disputes clause" which required administrative resolution of "any dispute concerning a question of fact arising under this contract...." *Id.* at 880. The court held that any tort action which Kiewit might have otherwise been able to maintain was bargained away in the contract. Because all rights and remedies were covered by the contract, it was error for the district

court to permit a tort action under the FTCA. *Id.* at 883–86.

This circuit was again confronted with the issue in *Martin v. United States,* 649 F.2d 701 (9th Cir.1981). There, the plaintiff's mother purchased a house from the Veterans Administration ("VA"). The VA agreed to make certain repairs in the house, including repairs to the plumbing in the bathtub. The VA required the purchaser to occupy the house before the repairs were completed. Because of the VA's failure to repair faulty plumbing, the plaintiff was injured. The district court entered judgment for the plaintiff in her claim under the FTCA for tortious breach of a contractual duty. The government appealed. This court affirmed over a vigorous dissent.

The majority in *Martin* attempted to distinguish *Woodbury* by characterizing Martin's claim as a "classic tort" as in *Aleutco,* because "the tort alleged here arises from an unsafe condition leading to personal injury." *Martin,* 649 F.2d at 705.

> If the claim arising out of the breach of contract were for expectation damages, i.e., asking for the installation of a good spout, it would be more characteristic of a contractual action … It would be improper to limit the plaintiff to a purely contract remedy. The cases that require such a limitation … involve breaches in commercial relationships leading to loss of profit or other purely economic harm.

*Id.* The dissent would have denied jurisdiction, arguing that *Woodbury* held that jurisdiction is improper under the FTCA if government liability is predicated exclusively on: "(1) an express or implied promise by the government … and (2) a wrongful breach of that promise." *Martin,* 649 F.2d at 706. In the dissent's view of the case, the government's liability was founded in the breach of its contractual obligations.

The most recent in this series of cases is *Walsh v. United States,* 672 F.2d 746 (9th Cir.1982). In *Walsh,* a landowner had conveyed to the government an easement across lands used for the pasturage of cat-

tle. The easement was for a road, which the government was responsible for maintaining. Cattle guards were built on the easement to contain the plaintiff's cattle. The government failed to maintain the cattle guards. The plaintiff's cattle escaped. He brought an action under the FTCA against the government, and the district court dismissed for lack of jurisdiction. The landowner appealed. This court reversed.

The *Walsh* opinion first holds that at common law the owner of an easement has an obligation to maintain the easement so not to interfere with the reasonable uses that the owner of the servient tenement might make of his estate. *Id.* at 748. The opinion further establishes that it is actionable negligence to fail to maintain the easement to the injury of the owner of the servient tenement. The opinion then confronts the argument of the government that the contract duty of the government to maintain the cattle guards under the terms of the easement conveyance took the case out of the FTCA and brought it within the exclusive jurisdiction of the Court of Claims.

The court in *Walsh* rejected the notion that an FTCA claim cannot be maintained when a contract claim is also possible, citing *Aleutco* with approval. *Walsh* correctly noted that *Woodbury* did not hold otherwise. *See Woodbury,* 313 F.2d at 296 ("we do not mean that no action will ever lie against the United States under the [FTCA] if a suit could be maintained for breach of contract upon the same facts"). *Walsh* did not rely on *Martin,* noting that it involved the different circumstances of negligent performance of a government contract. *Walsh,* 672 F.2d at 751. The court in *Walsh* decided that the action sounded in tort. The fact that a contract claim may also have existed did not detract from the existence of jurisdiction under the FTCA.

This case is much like *Aleutco,* where the contract was relevant only insofar as it established Aleutco Corporation's right to the property, an element of the tort al-

leged. In this case the contract establishes ownership interests, but otherwise is not implicated. The contract does not allocate liability under the circumstances presented by this case, and is therefore not controlled by the reasoning of *Kiewit.* Liability is not established exclusively by the contract, so Fort Vancouver is not limited by the holding of *Woodbury.* And, *Martin* and *Walsh* would arguably permit the claim under the FTCA even if liability did arise because of contract obligations. Moreover, according to *Walsh,* it is irrelevant that a contract action might also be possible based on the same facts. The district court erred in concluding it was without jurisdiction under the FTCA.

## 2. Failure to State a Claim.

### A. Standard of Review

The district court did not reach the government's argument that Fort Vancouver failed to state a valid tort claim under Washington law. The government nonetheless asks the panel to affirm on that basis. *See Salmeron v. United States,* 724 F.2d 1357, 1364 (9th Cir.1983) (district court may be affirmed on any ground supported by the record).

■ Whether a complainant has stated a claim is a question of law. *Guillory v. County of Orange,* 731 F.2d 1379, 1381 (9th Cir.1984). Our consideration of the question is therefore governed by the same standards that govern the district court's consideration of a motion to dismiss under Fed.R.Civ.P. 12(b)(6).

If "matters outside the pleading are presented to and not excluded by the" district court, a motion to dismiss for failure to state a claim "shall be treated as one for summary judgment." Fed.R.Civ.P. 12(b). The pleadings in this case were accompanied by affidavits. We will therefore treat the motion to dismiss as one for summary judgment, and determine whether there is any genuine issue of material fact and whether the government is entitled to judgment as a matter of law, Fed.R.Civ.P. 56(c).

### B. Merits

Fort Vancouver alleges that its property was damaged by the negligence of the government in starting and maintaining the fire. The threshold question is whether Fort Vancouver has a property interest in the timber.

■ Fort Vancouver's ownership interest in the timber, if any, arises solely from the contract with the government. The interpretation of a contract with the United States is governed by federal law. *E.g., United States v. Seckinger,* 397 U.S. 203, 209–10, 90 S.Ct. 880, 884, 25 L.Ed.2d 224 (1970); *Clearfield Trust Co. v. United States,* 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943). "The validity and construction of contracts through which the United States is exercising its constitutional functions, *their consequences on the rights and obligations of the parties,* the titles or liens which they create or permit, all present questions of federal law not controlled by the law of any State." *Seckinger,* 397 U.S. at 210 n. 12, 90 S.Ct. at 884 n. 12, (quoting *United States v. County of Allegheny,* 322 U.S. 174, 183, 64 S.Ct. 908, 913, 88 L.Ed. 1209 (1944)) (emphasis added).

The contract required that Fort Vancouver make cash deposits with the Forest Service prior to the removal of timber and in an amount equal to the estimated value of the timber to be cut in the succeeding 30 to 60 days. Under the contract, the cash deposit requirement is waived when payment was guaranteed by bond or deposited securities. This procedure is apparently not intended to be considered a basis for transfer of title to Fort Vancouver. The contract preserved at least bare title in the Forest Service:

B8.11 Title Passage. All right, title, and interest in and to any Included Timber shall remain in Forest Service until it has been cut, scaled, removed from Sale Area or other authorized cutting area and paid for, at which time title shall vest in Purchaser. For purposes of this Subsection, timber cut under cash deposit ... shall be considered to have been paid for. Title to any included Timber

which has been cut, scaled and paid for, but not removed from Sale Area ... on or prior to Termination Date shall remain in Forest Service.[2]

Fort Vancouver does not argue that it has title but insists that it has sufficient property interest to maintain a tort action under Washington law.

As the above-quoted portions of the contract indicate, "[a]ll right, title and interest" in the timber remains in the Forest Service until the timber is cut, removed, scaled and paid for. The contract states, however, that timber cut under "cash deposit" is considered "paid for." "*Title* to any Included Timber which has been cut, scaled and paid for, but not removed ... shall remain in Forest Service."

▮▮▮ It is unclear whether retention of just the "title" to cut timber that has been scaled and paid for by virtue of "cash deposit" is something less than "[a]ll right, title and interest." If there is a difference between mere "title" and "[a]ll right, title and interest," the implication is that some portion of the property interest in the timber has passed to Fort Vancouver, provided that the timber was cut under cash deposit and scaled. We find an ambiguity as to whether some property interest passed under the contract. When an ambiguity exists, the contract should be construed against the drafter. *See Seckinger*, 397 U.S. at 210, 90 S.Ct. at 884 (contract construed against government as drafter). The contract between Fort Vancouver and the Forest Service was a form contract prepared by the government. We will construe it against the government. If the timber was cut, scaled, and paid for within the meaning of the contract,[3] we hold that, although title did not pass, some property interest in the timber did pass to Fort Vancouver for which it would be entitled to compensation. We find it unnecessary to determine the precise nature of the property interest in cut, scaled, and paid for timber under the contract.

Fort Vancouver may also recover for any loss of economic advantage under the contract resulting from the destruction of the standing timber. Under the Federal Tort Claims Act, claimants are entitled to compensatory damages which, under the Act, are governed by state law. *Birnbaum v. United States*, 588 F.2d 319 (2d Cir.1978); *Abille v. United States*, 482 F.Supp. 703, 710–11 (N.D.Cal.1980). Before addressing the state law question, we must determine whether the government has immunity from this claim under the Federal Tort Claims Act.

▮▮▮ Section 2680(h) preserves government immunity for any claim arising out of "interference with contract rights." In this circuit, the tort of interference with contract rights requires *inter alia* the existence of a special economic relationship between plaintiff and a third party, which

---

**2.** The contract then goes on to allocate risk of loss, except under circumstances such as those presented by this case:

B8.12 Liability for Loss. If Included Timber is destroyed or damaged by fire [etc.], the party holding title shall bear the timber-value loss resulting from such destruction or damage, except that such losses after removal of timber ... but before scaling, shall be borne by Purchaser.... There shall be no obligation for Forest Service to supply, or for Purchaser to accept and pay for, other timber in lieu of that destroyed or damaged. **This Subsection shall not be construed to relieve either party of liability for negligence.**

Paragraph B7.42 governs liability when fire is negligently started by the purchaser. In that case the purchaser is liable. There is no comparable contract provision governing liability when the government is the negligent party.

**3.** Contract ¶ B8.12 quoted in note 2, *supra*, supports our interpretation of the contract and under certain circumstances may provide another basis for finding a property interest in the timber. Under ¶ B8.12 Fort Vancouver would have been liable for the non-negligent destruction of timber that was cut and removed but not yet scaled and, apparently, not yet paid for. Fort Vancouver's liability under ¶ B8.12 suggests that it has a property interest in timber that is simply cut and removed, although nothing in this case indicates that any of the timber in question was "removed" and then destroyed. The point is that ¶ B8.12, like ¶ B8.11, suggests that some property interest in the timber passes before all of the four conditions of cutting, scaling, payment, and removal are fulfilled.

relationship is disrupted by intentional acts of the defendant. *General Business Systems v. North American Philips Corp.,* 699 F.2d 965 (9th Cir.1983); *JBL Enterprises, Inc. v. Jhirmach Enterprises, Inc.,* 698 F.2d 1011 (9th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 106, 78 L.Ed.2d 109 (1983). This case does not involve a contract between plaintiff and a third party. It involves a contract between plaintiff and the government. Consequently, this is not an interference with contract rights claim and the section 2680(h) exception does not apply.

There are few cases in which the federal courts have addressed the applicability of section 2680(h) to a claim for interference with contract rights. In two of these cases, *Dupree v. United States,* 264 F.2d 140 (3d Cir.), *cert. denied,* 361 U.S. 823, 80 S.Ct. 69, 4 L.Ed.2d 67 (1959), and *Builders Corp. of America v. United States,* 148 F.Supp. 482 (N.D.Cal.1957), *rev'd,* 259 F.2d 766 (9th Cir.1958), the court held that the government was immune under section 2680(h). Neither of these cases affects our holding since both cases, unlike this case, involved the defendant's interference with a contract between plaintiff and a third party.

A different situation is presented when the contract is between the plaintiff and the defendant and the defendant's tortious acts impair property rights acquired under the contract. In *Nicholson v. United States,* 177 F.2d 768 (5th Cir.1949), Nicholson had a contract with the United States for the labor of prisoners of war. Thereafter, while being supervised by a federal guard, the prisoners negligently burned down plaintiff's barn. In *Nicholson,* the court of appeals rejected the government's contention that it was immune under section 2680(h), stating, "[t]he provision excepting from the Tort Claims Act 'interference with contract rights' has to do not with claims of the kind asserted here, torts committed by persons sustaining contract relations, but with the particular kind of tort described, 'interference with contract rights.'" *Id.* at 769.

This is precisely the situation here. The Forest Service negligently damaged rights of Fort Vancouver which, as it happens, arose from the contract between Fort Vancouver and the Forest Service. What occurred here does not give rise to a claim for "interference with contract rights" because there was no interference with a contract between plaintiff and a third party. Section 2680(h) does not apply; the government is not immune. This result follows whether the tort was intentional or negligent.

Since the government is not immune and since compensatory damages under the state law of Washington include profit losses resulting from negligent acts, Fort Vancouver arguably would be entitled to the anticipated profits that it would have realized had the standing timber not been destroyed. *See Berg v. General Motors Corp.,* 87 Wash.2d 584, 555 P.2d 818 (1976).

Assuming the necessary preconditions of cutting, scaling, and paying for the timber have been fulfilled, it remains to be decided if Washington law protects the property interest that passes. We hold it does. At the very least, when the preconditions are satisfied, Fort Vancouver is entitled to immediate possession of the timber. The government concedes that Washington law permits one with an immediate right to possess property a cause of action against another who tortiously interferes with that right. *See, e.g., Judkins v. Sadler-MacNeil,* 61 Wash.2d 1, 376 P.2d 837 (1962) (one with immediate right to possession may bring action for conversion of chattel); *Muscatel v. Storey,* 56 Wash.2d 635, 354 P.2d 931 (1960) (one without right to possession may not bring action for conversion); *see also* Restatement (Second) of Torts, § 220 (liability for trespass to chattel to person entitled to future possession).

Whether the cut timber was scaled and paid for within the meaning of the contract are unresolved questions of fact material to the merits of Fort Vancouver's claim. Summary judgment for the government is therefore inappropriate. It will be necessary for the district court to address

these questions on remand. We express no further opinion with regard to the measure of damages in the event the evidence shows the government was negligent and that Fort Vancouver is entitled to compensation.

REVERSED and REMANDED.