952 F.2d 407
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
SANTA MONICA COMMUNITY COLLEGE DISTRICT; Richard Moore;
Louis Jones, Jr., Plaintiffs-Appellants,
v.
Roberta MASON; Peter Macdougall; Patricia G. Siever;
Barbara Davis; Lindsay Conner; Julia Wu; Alther
R. Baker; Harold W. Garvin, Defendants-Appellees.
 No. 90-55655.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 4, 1991.
Decided Dec. 17, 1991.
 
 Before FLETCHER, CANBY and BOOCHEVER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Plaintiffs Santa Monica Community College District, Dr. Richard Moore and Louis Jones, Jr. appeal the district court's order dismissing with prejudice their claims under the Thirteenth and Fourteenth Amendments and 42 U.S.C. §§ 1981, 1983, 1985 and 2000d, on grounds that some defendants were protected by the Eleventh Amendment, the plaintiffs lacked standing, and the plaintiffs failed to state a violation of constitutional rights. We affirm the judgment, but for different reasons from those stated by the district court.
 
 FACTUAL BACKGROUND
 
 3
 The Commission on Athletics ("COA") is the intercollegiate athletics rule-making arm of the California Association of Community Colleges ("CACC"). Its role is similar to that played by the NCAA in relation to four-year colleges. In April, 1983, the COA granted Santa Monica Community College District ("SMCCD" or "Santa Monica") permission to make "first contact" with student athletes at twelve high schools within the neighboring Los Angeles Community College District ("LACCD") attendance area. Athletic recruiting outside a college's own district is generally prohibited by CACC's Athletic Code. Exemptions to districts other than Santa Monica have never been authorized.
 
 
 4
 On January 1, 1988, the State of California modified its previous rules which limited interdistrict community college attendance and passed "free-flow legislation" permitting students to enroll in any community college regardless of their district of residence. An ad hoc committee was formed to examine the continued need for Santa Monica's exemption in light of this major change in enrollment policy. The ad hoc committee met on April 10, 1989, and recommended that the exemption be ended with regard to four of the twelve LACCD high schools. The Southern California Athletic Conference ("SCAC") and the Western State Conference ("WSC"), representing 23 community colleges, voted on April 12, 1989, to recommend that COA rescind SMCCD's athletic recruiting privilege at all twelve high schools. On October 27, 1989, the COA voted to rescind SMCCD's athletic recruiting privilege, thus banning SMCCD from first contact with athletes outside its own district.
 
 
 5
 It is undisputed that this action placed Santa Monica on equal footing with other community colleges in California, all of which are prohibited by Athletic Code section 7.01 from engaging in interdistrict athletic recruiting. All community colleges are, however, permitted to engage in general-purpose recruiting at the invitation of high schools in other districts. Indeed, Santa Monica has an "Outreach" program which visits twenty Los Angeles high schools at their invitation. Outreach counselors are not prevented from talking with student athletes who attend the general recruitment programs. Nor are Santa Monica coaches and athletic staff prohibited from speaking to or answering questions from out-of-district student athletes who approach the college. Outreach counselors and athletic staff are prohibited only from approaching out-of-district student athletes for purposes of soliciting their participation in Santa Monica's athletic program.
 
 
 6
 In their briefs and oral argument plaintiffs assert their belief that the state-wide rule allowing general or academic recruiting but disallowing athletic recruiting is unconstitutional because its impact falls almost exclusively on blacks. However, that is not the content of the complaint filed in the present case. Plaintiffs make no challenge to the state-wide ban on interdistrict athletic recruiting. Rather, they allege that the COA's decision to rescind SMCCD's special athletic recruiting privilege was motivated by racial animus.
 
 PROCEDURAL BACKGROUND
 
 7
 On December 21, 1989, Plaintiffs SMCCD, Dr. Richard Moore (Superintendent of SMCCD and President of Santa Monica College), and Louis Jones, Jr. (a student-athlete at Venice High School, one of the twelve schools at which Santa Monica previously engaged in athletic recruiting) filed a complaint seeking a preliminary injunction and permanent injunctive and declaratory relief based on 42 U.S.C. §§ 1981, 1983, 1985 and 2000d and the Thirteenth and Fourteenth Amendments. Plaintiffs filed four declarations in support of their motion for a preliminary injunction; defendants filed five declarations in opposition.[1] In a five-page "minute order" dated February 5, 1990, the district court denied the plaintiffs' motion for preliminary injunction, dismissed the pendent claims, and granted defendants' motion to dismiss the complaint but with leave to amend. The court dismissed all of the non-individual defendants on Eleventh Amendment grounds but indicated that the Eleventh Amendment would not protect individual defendants sued in their official capacity from claims for declaratory and injunctive relief. The court dismissed the complaint as a whole on the basis that no violation of constitutional rights under the federal constitution was alleged. Many of the facts recited in the minute order, assumed to be true for the purpose of the ruling, were taken from the declarations.
 
 
 8
 In reaching its conclusion, the court held that "a college's 'right' to recruit athletes is not protected by the United States Constitution" and that Louis Jones, Jr. was not deprived of any "right" to be recruited because he "is free to attend SMCC, and play football there if he is good enough to make the team." The court concluded that "[s]ince black students, athletic students, and any other variety of students, may attend SMCC, the ban on athletic recruitment does not deprive such students of any rights. SMCCD has no right to enlist the United States Constitution in aid of its athletic program, and should relegate itself to claims arising under state law, if any." In the course of its order the court also found it "plainly apparent that the claimed discrimination against blacks does not exist and that such consideration is merely advanced as the cover for SMCCD's grievance over the restriction on its athletic recruitment."
 
 
 9
 Plaintiffs filed a Second Amended Complaint on February 23, 1990. Defendants moved to dismiss. Among their papers in opposition was a "Request for Judicial Notice" of all the papers filed in connection with the preliminary injunction. Plaintiffs did not object to this request. The district court subsequently dismissed the plaintiffs' Second Amended Complaint in a minute order dated April 16, 1990. The district court acknowledged that some of the facts recited in the order were "taken from plaintiffs' prior complaint or from judicial notice as requested by defendants."
 
 
 10
 The court dismissed the LAACD defendants both on Eleventh Amendment grounds and on the basis that no claim for an injunction or declaratory relief could be stated against them since they lacked the power to reverse CACC decisions. While noting that the Eleventh Amendment would not obviate a claim against the individual CACC defendants, it found that "[t]he real difficulty with the complaint is that the facts alleged do not show the violation of any constitutional right.... The essence of the problem is that there is no substance to the argument that an athlete has a right to be recruited." The court further found that Jones had been deprived of no rights at all since he "can take the bus up Lincoln Blvd from Venice to Santa Monica, walk into the football coach's office, and inquire if SMCC is interested in him" and since he may enroll at Santa Monica and may attend Santa Monica's Outreach program.
 
 
 11
 The court also held that "[t]he matter may be restated in terms of standing. SMCCD and its president are not the people whose constitutional rights are allegedly taken away, and do not stand in their shoes.... And, plaintiff Jones, the quarterback from Venice, has had no damage since he can do anything he would otherwise do." The district court concluded by stating: "The Constitution is too important a document to be trivialized in the interests of an athletic recruitment program." The court then entered a separate order dismissing the action and entering final judgment for purposes of Rule 54(a). The plaintiffs filed a timely notice of appeal. They also seek attorneys' fees for the appeal pursuant to 42 U.S.C. § 1988. Defendant-appellees seek attorneys' fees and double costs pursuant to Fed.R.App.P. 38 and 28 U.S.C. § 1912. We have jurisdiction to review the district court's order pursuant to 28 U.S.C. § 1291.
 
 DISCUSSION
 
 12
 Defendants moved "to Dismiss Second Amended Complaint (Pursuant to FRCP 12(b)(1) and (6))." Rule 12(b) provides that if, on a motion to dismiss under subsection (6), "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." When it is evident, as it is here, that the district court considered matters outside the pleading, this court may construe the decision as one for summary judgment even though the district court framed it otherwise. See, e.g., Coverdell v. Department of Social and Health Services, 834 F.2d 758, 761 (9th Cir.1987), Fort Vancouver Plywood Co. v. United States, 747 F.2d 547, 552 (9th Cir.1984).
 
 
 13
 Of course, the nonmoving party must have adequate notice that the 12(b)(6) motion will be converted into a motion for summary judgment. Mayer v. Wedgewood Neighborhood Coalition, 707 F.2d 1020, 1021 (9th Cir.1983). In this circuit, notice is deemed sufficient when a party represented by counsel submits matters outside the pleadings and invites consideration of them. Grove v. Mead School District No. 354, 753 F.2d 1528, 1533 (9th Cir.), cert. denied 474 U.S. 826 (1985). Plaintiffs in this case submitted four declarations and accompanying exhibits to the district court at the preliminary injunction phase. Upon the motion to dismiss, defendants asked the court to take notice of all papers filed in connection with the preliminary injunction. Because these included plaintiffs' as well as defendants' declarations, because review of plaintiffs' declarations indicates that they will be unable to introduce any further evidence to support their theory of the case, and because plaintiffs' counsel during oral argument urged this court to refer to the declarations, we are satisfied that plaintiffs had adequate notice that the court in effect would treat the motion to dismiss as one for summary judgment.[2]
 
 
 14
 Summary judgment is reviewed de novo. The appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Tzung v. State Farm Fire and Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989). There is no genuine issue of material fact
 
 
 15
 unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.
 
 
 16
 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986) (citations omitted).
 
 
 17
 Proof of discriminatory intent is necessary to state an equal protection claim or to recover under 42 U.S.C. § 1983 or § 1985 on equal protection grounds. Washington v. Davis, 426 U.S. 229, 242 (1976) (equal protection). It is likewise necessary for recovery under 42 U.S.C. §§ 1981 and 2000d. Patterson v. McLean Credit Union, 491 U.S. 164 (1989) (§ 1981); Guardians Assn. v. Civil Service Commission of City of New York, 463 U.S. 582 (1983) (§ 2000d).[3] Proof of disproportionate impact on minorities can satisfy the intent requirement but only if it tends to show that some invidious purpose underlies a facially neutral policy. Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 265-66 (1977). That is, a sufficient showing of discriminatory effect may constitute evidence from which discriminatory intent may be inferred. Even after viewing everything that plaintiffs have supplied in the light most favorable to them, we conclude that they have not presented sufficient evidence of discriminatory intent under either approach to support a jury verdict in their favor.
 
 A. Direct evidence of discriminatory intent
 
 18
 Plaintiffs' Second Amended Complaint asserted that the decision to revoke Santa Monica's exemption[4] "was motivated by racial animus and was intended to affect primarily, if not exclusively, blacks" and that "the purpose of the ban was to prevent the migration of blacks from inner-city schools to outer-city community colleges." In order to survive summary judgment, a plaintiff "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, 477 U.S. at 248 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253 (1968)). Plaintiffs provide only two facts that even marginally might support their theory of discriminatory intent; neither of them creates a "genuine issue for trial."
 
 
 19
 Finch Declaration. Lee Finch, Santa Monica's Dean of Athletics, declares that at the April 10 meeting of the ad hoc committee, he expressed his belief that any restrictions on the college's ability to recruit out-of-district athletes would affect primarily, if not exclusively, blacks. His declaration also acknowledges that the committee expressly refused to discuss the possible effect of the recruitment ban on black student athletes.[5] Without more, these statements do not establish discriminatory intent. It is well settled that discriminatory intent requires more than "awareness of consequences. It implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." Personnel Adm'r of Mass. v. Feeney, 442 U.S. 256, 279 (1979) (footnote omitted). Mere knowledge of possible (or even probable) disparate impact is therefore insufficient. Finch's description of the April 12 meeting of the Western State Conference makes obvious the reason for the change. Finch acknowledges that neither he nor anyone else discussed the racial impact of the decision at this meeting. The reason offered by WSC was the rational and non-racial ground that the member districts "had not realized that Santa Monica College had ever been allowed out-of-district recruiting privileges." Finch Declaration at 11. As for the final COA meeting where the decision to revoke the exemption was finalized, none of plaintiffs' declarations indicate that any discussion or consideration of race took place. The change was made "in spite of" and not "because of" its impact.
 
 
 20
 Kamin memorandum. Plaintiffs stress a statement taken from a memorandum written by Aviva Kamin, chair of the ad hoc committee. This memorandum reports that among the comments made at the committee meeting was the statement that "We should help in the retention efforts now being made to keep inner-city high school graduates attending the inner-city community colleges in their area." Plaintiffs argue that this sentiment is merely shorthand for the race-based goal of keeping blacks in the inner city. However, on the same page as the quoted passage, Kamin explained that "We should try and help the inner city colleges who are getting off the ground athletically at this time in the same way we helped Santa Monica College establish a better athletic program." Taken in context, it appears that the references to inner city colleges' retention programs are simply part of the non-racial purpose of equalizing the recruitment rules to give all community college districts equal access to their own athletes. We do not think they can be read as more.
 
 
 21
 B. Discriminatory intent inferred from discriminatory effect
 
 
 22
 The declaration of Coach Ralph Vidal explains that the football and basketball teams of ten of the high schools covered by the exemption are predominantly, and in some cases entirely, black. These numbers alone are insufficient to infer discriminatory intent. As the Supreme Court explained in Arlington Heights, that inference may be drawn from disparate impact if "a clear pattern, unexplainable on grounds other than race, emerges from the effect of the state action." 429 U.S. at 266. The pattern of disparate impact in this case is not only clearly explainable on grounds other than race, but clearly the motivation is for reasons other than race. Under the exemption, Santa Monica, unlike every other community college in California, was allowed to recruit for athletic purposes outside its own district. Under the exemption, the students at the twelve high schools, unlike the students at every other high school in California (and even every other high school in the LACCD), could be athletically recruited by colleges in two districts rather than one. The obvious inference to be drawn from these facts is that the exemption was revoked so that all community colleges and all students would operate under the same recruitment rules. It strains credulity to infer that any discriminatory intent motivated this decision. Throughout, we are struck by the fact that all the schools want to enroll minority athletes, not exclude them. No one wants to deprive these athletes of anything. They are a sought-after asset. Competitive athletics, not constitutional deprivation, fuels this litigation.
 
 CONCLUSION
 
 23
 In light of our conclusion that plaintiffs have failed to point to evidence that could establish intent to discriminate on the part of any defendant, we need not address the district court's dismissal of some defendants on Eleventh Amendment grounds.
 
 
 24
 Because plaintiffs are not the "prevailing party," they are not entitled to attorneys' fees pursuant to 42 U.S.C. § 1988. We likewise decline to award the defendants attorneys' fees and double costs as they request pursuant to Fed.R.App.P. 38 and 28 U.S.C. § 1912. Although the plaintiffs' appeal failed on the merits, we cannot say that it was frivolous under Rule 38 in light of our disagreements with the district court's analysis. We likewise see no basis for awarding damages for delay pursuant to 28 U.S.C. § 1912.
 
 
 25
 The judgment in favor of defendants is AFFIRMED. The requests for attorneys' fees and double costs are DENIED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by the Ninth Circuit Rule 36-3
 
 
 [1]
 Plaintiffs' motions were accompanied by declarations from Lee Finch (dean of Santa Monica) and Ralph Vidal (Santa Monica's head football coach). Finch's declaration included exhibits. Defendants responded with a memorandum of points and authorities in opposition to plaintiffs' motion for preliminary injunction and in support of defendants' motion to dismiss. This memorandum was accompanied by declarations and exhibits from Walter Rilliet (Commissioner of Athletics for CACC), Charles Brown (Dean of Students and College Relations for West Los Angeles College), James Raack (Athletic Director for West Los Angeles College), Courtney Borio (Athletic Director of Los Angeles Trade Technical College) and James Heinselman (Vice Chancellor of Educational Services for LACCD). Plaintiffs responded to defendants' opposition with a memorandum accompanied by additional declarations from plaintiff Richard Moore (Superintendent of SMCCD) and Archie Morrison (former Vice President of Student Services for SMCCD)
 
 
 [2]
 Had the district court limited itself to the allegations of the complaint, as is required on a 12(b)(6) motion, we doubt that dismissal would have been appropriate. To start with, the district court construed plaintiffs' claim as a constitutional "right to recruit" or "right to be recruited." Plaintiffs' claimed no such right in the constitution; rather, they insisted that decisions regarding recruitment not be motivated by racial animus. Had plaintiffs been able to prove Santa Monica's exemption was revoked in order to disadvantage black students on the basis of race, relief may have been in order. Similarly, we cannot agree that plaintiffs lack standing because they allege no injury. Being denied a benefit solely because of one's race is injurious. Furthermore, we cannot agree that high school athletes are denied nothing of value when they are not recruited. The declaration of Coach Vidal establishes that a high school athlete is unlikely to attend a community college at all absent an athletic recruiting program. Losing access to higher education is unquestionably an injury
 Despite our different analytic approach from that of the district court, we nonetheless reach the same result because the plaintiffs have wholly failed to show as a factual matter any intent to discriminate on the basis of race.
 
 
 [3]
 The Supreme Court has not decided whether discriminatory intent is a necessary element of a claim under the Thirteenth Amendment. Memphis v. Greene, 451 U.S. 100, 120 (1981). However, the Court relied in large part on the absence of discriminatory intent in concluding that the action challenged in Greene could not be characterized as "a badge or incident of slavery." Id. at 126. The same can be said of the decision challenged here, which merely subjects all of California's community colleges and high school athletes to identical recruiting rules
 
 
 [4]
 There is a genuine dispute between plaintiffs' and defendants' declarations as to whether the 1983 exemption was granted in part to improve minority representation at Santa Monica. Plaintiffs themselves submitted as an exhibit a copy of the April 7, 1983 memorandum from Walter Rilliet explaining the exemption. This memorandum nowhere mentions race, saying instead that the exemption was designed to compensate for the fact that there are only two high schools within the Santa Monica Community College District
 We must, however, view the evidence in the light most favorable to the plaintiffs, so we assume that the exemption was granted in part to achieve racial balance at Santa Monica. This does not affect the issue being litigated: whether the decision to revoke the exemption in 1989 impermissibly discriminated on the basis of race.
 
 
 [5]
 Finch also declares that at the ad hoc committee meeting, Courtney Borio, basketball coach at Los Angeles Trade Technical College, said that he did not wish to compete with Santa Monica in recruiting at Crenshaw High. Even though the Crenshaw players are all black, this statement does not evidence racial animus. Rather, it suggests Borio's displeasure that he must compete in recruitment against an out-of-district college, unlike the coaches in every other district in California