Billy G. **CULBREATH** and Mary Alice Culbreath, Appellants,

v.

John **BLOCK,** Individually and in his capacity as Secretary of the U.S. Department of Agriculture; Charles Shuman, Individually and in his capacity as Administrator of the Farmers Home Administration; Robert L. Hankins, Individually and in his capacity as State Director of Arkansas; Michael L. Dunaway, Individually and in his official capacity as Chief of Farmer Programs; George Smith, Individually and in his capacity as Farmer Program Specialist; John E. Harris, Individually and in his capacity as County Supervisor, Appellees.

No. 86–1080.

United States Court of Appeals, Eighth Circuit.

Submitted June 11, 1986.

Decided Sept. 4, 1986.

---

**62.** *See* the discussion of the page numbers on a new compilation of Shakespeare's work, *supra,* at page 1235 n. 18.

Dale Reesman, Boonville, Mo., for appellants.

Danny L. Woodyard, Little Rock, Ark., for appellees.

Before ROSS, FAGG and BOWMAN, Circuit Judges.

FAGG, Circuit Judge.

Billy G. Culbreath and Mary Alice Culbreath appeal the district court's grant of summary judgment and dismissal of the Culbreaths' *Bivens*-type constitutional tort claim against various officials and employees of the Farmers Home Administration (FmHA). *See Bivens v. Six Unknown Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Arcoren v. Farmers Home Administration,* 770 F.2d 137 (8th Cir.1985). We affirm.

The Culbreaths farmed in Woodruff County, Arkansas. Between January 1980 and April 1981, the Culbreaths received four FmHA loans totaling approximately $155,460. By December 1981, the Culbreaths were seriously delinquent in their loan payments. After a routine review of their account, FmHA notified the Culbreaths by letter that because of their failure to fulfill their loan obligations FmHA might no longer be able to fund their farming operation. The letter also suggested the Culbreaths consider independent refinancing or sale of part of the property to meet the loan payments.

In January 1982, the Culbreaths met with FmHA officials who again informed the Culbreaths they would no longer be FmHA funded. At the meeting, the Culbreaths were also told that if the delinquent account was not settled by June 1, 1982, FmHA would institute liquidation proceedings to satisfy the debt. The Cul-

breaths claim they specifically inquired about alternatives to this action and were told by FmHA personnel there were none. After unsuccessful attempts to restructure the debt, in September 1982 the Culbreaths filed for bankruptcy in an attempt to forestall liquidation. After learning of the bankruptcy filing, FmHA suspended action on the Culbreaths' loans. Foreclosure proceedings were never instituted. On September 19, 1983, as part of a settlement agreement with FmHA, the Culbreaths conveyed to FmHA by warranty deed most of their property. FmHA recorded the deed on December 7, 1983.

The Culbreaths claim that FmHA's expression of its intent to liquidate without also alerting the Culbreaths to available alternatives forced the liquidation of their farming operation and amounted to a taking of property without due process in violation of the fifth amendment. Specifically, the Culbreaths seek compensatory and punitive damages from the defendants in their individual capacities for three actions: (1) failing to follow numerous FmHA regulations in determining to liquidate the debt and failing to inform the Culbreaths of the chance to appeal that determination, *see, e.g.,* 7 C.F.R. §§ 1872.17, 1900.51–.56, 1955.-15, 1962.40; (2) failing to advise the Culbreaths of their right to request deferral of the loan payments under 7 U.S.C. § 1981a; and (3) recording the deed after the issuance of a nationwide injunction against demand by FmHA for voluntary conveyances, *Coleman v. Block,* 580 F.Supp. 192 (D.N.D.1983).

With respect to the Culbreaths' first and second claims, we are willing to assume for purposes of this appeal that the Culbreaths were constitutionally entitled to certain preliquidation procedural protections and that these procedures were not followed in this case. This assumption does not, however, pave the way for the Culbreaths' constitutional claim.

■ Federal executive branch officials enjoy qualified immunity from suits for constitutional violations to the extent their conduct does not violate "clearly estab-lished law." *Mitchell v. Forsyth,* —— U.S. ——, 105 S.Ct. 2806, 2818, 86 L.Ed.2d 411 (1985) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Where neither the constitutional right nor the constitutional cause of action is expressly created by the terms of a regulation or statute, officials do not forfeit qualified immunity solely by failing to comply with the provisions of that statute or regulation. *Davis v. Scherer,* 468 U.S. 183, 194, 104 S.Ct. 3012, 3019–20, 82 L.Ed.2d 139 (1984); *Freeman v. Blair,* 793 F.2d 166, 173 (8th Cir.1986). Rather, qualified immunity will be forfeited only when at the time of the conduct in question it is clearly established that plaintiffs have the particular constitutional right and that the statutory and regulatory provisions in question bear upon or implicate that right. *Davis,* 468 U.S. at 193–96, 104 S.Ct. at 3019–21.

■ Here, at the time the challenged actions occurred, it was not clearly established that the Culbreaths were constitutionally entitled to any preliquidation process. Only after this court's decision in *Allison v. Block,* 723 F.2d 631 (8th Cir. 1983), was the constitutional right to preliquidation notice of the right to apply for a loan deferral clearly established. *Id.* at 634. *Compare Allison v. Block,* 556 F.Supp. 400, 405–06 (W.D.Mo.1982), *aff'd,* 723 F.2d 631 (8th Cir.1983) (notice required), *with Neighbors v. Block,* 564 F.Supp. 1075, 1080 (E.D.Ark.1983) (no notice required). Even then, *Allison* was limited to the question of preliquidation deferral notice and did not address or recognize the existence of additional constitutionally mandated preliquidation procedures, such as notice of the right to appeal from the preliminary liquidation decision itself. *See, e.g., Coleman v. Block,* 580 F.Supp. 194, 211 (D.N.D.1984); *Gamradt v. Block,* 581 F.Supp. 122, 134 (D.Minn.1983).

Thus, between December 1981 when FmHA initially reviewed the Culbreaths' loan and September 1983 when the conveyance occurred, FmHA officials could not reasonably be expected to know either that

any type of preliquidation process was constitutionally required or equally important that the various statutory and regulatory provisions here involved bear upon or implicate such a constitutional right. Under these circumstances, the defendants are protected by qualified immunity. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. *See also Flinn v. Block,* 620 F.Supp. 891, 892 (E.D. Mo.1985); *Schieffer v. Block,* 601 F.Supp. 90, 91 (E.D.Mo.1984).

■ Finally, the Culbreaths claim that *Coleman v. Block,* 580 F.Supp. 192 (D.N.D. 1983), prevented FmHA from recording the deed to property which had been conveyed prior to the *Coleman* decision. We disagree. Both *Coleman* and a follow-up memorandum by FmHA officials dealt with prohibiting demand for voluntary conveyances and did not speak to the recording of deeds to property already conveyed. *See Coleman,* 580 F.Supp. at 193–94. The fact that FmHA later suspended this practice is irrelevant to whether it was clearly prohibited at the time the Culbreaths' deed was actually recorded by FmHA.

We have considered each of the Culbreaths' claims and conclude each is barred by the defendants' qualified immunity defense. Finding no error, we affirm the summary judgment of the district court.