Delbert DARKO and Josephine
Darko, Plaintiffs,

v.

The UNITED STATES of America, and its DEPARTMENT OF AGRICULTURE, FARMERS HOME ADMINISTRATION, Defendant.

No. CV–85–154–GF.

United States District Court,
D. Montana,
Great Falls Division.

Oct. 24, 1986.

John R. Christensen, Stanford, Mont., for plaintiffs.

George Darragh, Asst. U.S. Atty. Dist. of Mont., Great Falls, Mont., for defendant.

## MEMORANDUM AND ORDER

HATFIELD, District Judge.

The United States of America, acting through the Farmers Home Administration ("FmHA") of the Department of Agriculture, moves the court to dismiss the present action for monetary relief, upon the ground that the plaintiffs' complaint fails to state a claim upon which relief can be granted under the Federal Tort Claims Act (28 U.S.C. §§ 1346(b) and 2671–2680). Upon review of the pleadings and consideration of the arguments advanced by the parties with respect to the Government's motion, the court is compelled to conclude that the plaintiffs' complaint fails to state a claim in tort cognizable under the Federal Tort Claims Act. Rather, because the claim advanced by the plaintiffs is "contractual" in nature, jurisdiction over the plaintiffs' claim is vested in the federal courts pursuant to the Tucker Act (28 U.S.C. §§ 1346(a), 1491). Because the claim is for an amount in excess of $10,000, jurisdiction over the controversy is vested exclusively in the United States Claims Court, 28 U.S.C. § 1346(a). Consequently, the court, *sua sponte*, deems it appropriate to DISMISS this action for want of subject matter jurisdiction.

## FACTUAL BACKGROUND

The plaintiffs, Delbert and Josephine Darko, have, for a number of years, operated a ranch located near Belt, Montana. Over the years, the Darkos, through a series of loans secured by a mortgage on the ranch, have become indebted to the FmHA in the amount of approximately a quarter of a million dollars. As of the present date, the FmHA has apparently not instituted foreclosure proceedings against the Darkos.

In an effort to reduce their obligation to the FmHA, the Darkos attempted, in early 1983, to negotiate a lease of their ranch property to a third party. Pursuant to the terms of their mortgage agreement with the FmHA, however, the Darkos needed the approval of the FmHA before they could lease the ranch property. The proposed lease agreement which the Darkos presented to the FmHA for approval provided for a lease term of ten years. While the FmHA indicated it would approve the lease for a term of five years, it declined to approve the lease for the proposed ten-year period. Because of the five-year limitation upon which the FmHA's approval was conditioned, the third party apparently chose not to consummate the lease agreement. Consequently, the Darkos have been unable to reduce their indebtedness to the FmHA.

Based upon the foregoing factual predicate, the Darkos seek to recover $600,000 in damages from the Government under the Federal Tort Claims Act. The essence of the Darkos' claims lies in their assertion that the FmHA had an implied obligation under Montana law to deal with them in "good faith"; a duty akin to a fiduciary duty. The Darkos contend the FmHA breached its fiduciary duty by arbitrarily withholding its approval of the subject lease.

## DISCUSSION

A cursory review of numerous recent decisions of the Montana Supreme Court indicates that Montana law recognizes an implied duty of "good faith" attends a commercial contract, at least, it appears, where

the parties to the contract have bargained from unequal positions. *See, Weber v. Blue Cross of Montana,* 196 Mont. 454, 463 P.2d 198 (1982); *First National Bank in Libby v. Twombley,* Mont., 689 P.2d 1226 (1984); *Tribby v. Northwestern Bank of Great Falls,* Mont., 704 P.2d 409 (1985); *Nicholson v. United Pacific Insurance Co.,* Mont., 710 P.2d 1342 (1985). While the precise nature and extent of the obligation are not readily ascertainable under present Montana decisional law, the point need not detain the court. Instead, the court assumes, for purposes of discussion, that the obligation would attend a loan transaction similar to the one at issue in the case at bar, had that transaction occurred between two private individuals in the position of the litigants.

Consistent with the decisional law discussing the nature of the obligation of "good faith," the Darkos take the position that a breach of the obligation is compensable in tort, regardless of the fact the duty has its genesis in.contract. Because such a tort is not expressly excepted from coverage under the Federal Tort Claims Act, so the argument goes, breach of that obligation by the FmHA would be compensable under the Act. While the court takes proper cognizance of the fact that the coverage of the Federal Tort Claims Act is not limited to the "ordinary common-law type of tort,"[1] logic and precedent compel the court to conclude that the Darkos' complaint fails to state a claim in tort falling within the contemplation of the Act.

The Federal Tort Claims Act waives the sovereign immunity of the United States of America over actions for money damages "if a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Section 1346(b) vests jurisdiction over tort claims falling within the purview of the Act exclusively in the federal district courts.

The Tucker Act, on the other hand, waives sovereign immunity with respect to claims against the United States founded, *inter alia,* upon the Constitution or contract or "for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491. The United States Claims Court and the federal district courts have concurrent jurisdiction over claims covered by the Tucker Act, but only when the claim does not exceed $10,000.00. 28 U.S.C. § 1346(a)(2). Jurisdiction over claims covered by the Tucker Act for amounts in excess of $10,000.00, however, is made exclusive to the United States Claims Court.

On its face, the Darkos' complaint alleges the FmHA is liable under Montana tort law. The complaint does not assert a claim for breach of contract. Nonetheless, the loan agreements extant between the FmHA and the Darkos are clearly implicated, since the claim in tort is predicated on the fact that the obligation upon which the claim is bottomed attends the loan contract. Consequently, in assessing the propriety of this court asserting jurisdiction over this controversy under the Federal Tort Claims Act, the determinative inquiry is whether the Darkos' claim is tortious or contractual in nature. Restated, the issue presented is whether the Darkos' claim is actionable under the FTCA, or whether they are confined to the remedy available under the Tucker Act.

Analysis must begin with a review of the numerous notable cases in which the court of appeals for this circuit has addressed the jurisdictional relationship between the Federal Tort Claims Act and the Tucker Act in a variety of factual contexts. The seminal case in this circuit is *Woodbury v. United States,* 313 F.2d 291 (9th Cir.1963), wherein the claim asserted by the plaintiffs was based on the Government's alleged breach of its fiduciary duty arising from the execution and performance of contracts for construction and financing of a housing project. While the district court concluded that an implied obligation of the Government under the contract was to arrange for

---

1. *See, Hatahley v. United States,* 351 U.S. 173, 76 S.Ct. 745, 100 L.Ed. 1065 (1956); *Indian Towing Co. v. United States* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955).

or provide long-term financing, the district court rejected the proposition urged by Woodbury that his breach of fiduciary duty claim constituted a tort. The trial court concluded that given the contractual nature of the claim, jurisdiction was vested in the United States Claims Court. In affirming the district court's dismissal, the Ninth Circuit stated:

> Many breaches of contract can also be treated as torts. But in cases such as this, where the "tort" complained of is based entirely upon breach by the government of a promise made by it in a contract, so that the claim is in substance a breach of contract and incidentally and conceptually also a tort claim, we do not think that the common law or local state law right to "waive the breach and sue in tort" brings the case within the Federal Tort Claims Act.

313 F.2d at 295. The court proceeded to clarify its holding:

> We do not mean that no action will ever lie against the United States under the Tort Claims Act if a suit could be maintained for a breach of contract based upon the same facts. We only hold that where, as in this case, the action essentially for breach of a contractual undertaking and the liability, if any, depends wholly upon the Government's alleged promise, the action must be under the Tucker Act, and cannot be under the Federal Tort Claims Act.

313 at 296.

A key consideration which prompted the court to reject Woodbury's proposition is

the need for uniform interpretation and application of government contracts under federal law:

> ... The notion of such waiver of breach and suit in tort is a product of the history of English forms of action; it should not defeat the long established policy that government contracts are to be given a uniform interpretation and application under federal law, rather than being given different interpretations and applications depending upon the vagaries of the laws of fifty different states.

313 F.2d at 295.

The court in *Woodbury* simply refused to attribute to Congress an intent to permit displacement of federal law in the construction and application of government contracts. 313 F.2d 296.[2]

The Ninth Circuit was again called upon to examine the jurisdictional relationship between the Federal Tort Claims Act and the Tucker Act in *Martin v. United States,* 649 F.2d 701 (9th Cir.1981). The plaintiffs claim in *Martin* emanated from an injury caused by a faulty fixture in a house purchased from the Veterans Administration ("VA"). The injury occurred after the VA failed to make some repairs to that fixture. The district court entered judgment for the plaintiff with respect to her claim under the Federal Tort Claims Act for tortious breach of contract. In an effort to distinguish *Woodbury,* the court in *Martin* characterized Martin's claim as a classic tort. In that regard the court stated:

---

**2.** In *Blanchard v. St. Paul Fire and Marine Insurance Co.,* 341 F.2d 351 (5th Cir.1965); *cert. denied,* 382 U.S. 829, 86 S.Ct. 66, 15 L.Ed.2d 73 (1965), the Fifth Circuit specifically adopted the *Woodbury* rationale in a case akin to the case at bar. *Blanchard* involved a claim by a government contractor who alleged that the Government had wrongfully interferred with the performance and completion of the subject contract. The Fifth Circuit upheld the district court's dismissal of Blanchard's FTCA claim, norwithstanding the fact that the plaintiff characterized the claim as a claim of negligence. *Id.* at 358. Because the complaint was based upon an alleged failure to perform an explicit or implicit contractual obligation, the Fifth Circuit agreed with the district court's conclusion that

Blanchard's remedy, if any, was under the Tucker Act. *Id.* at 356.

An apparently contrary result was reached by the Third Circuit in *Aleutco Corp. v. United States,* 244 F.2d 674 (3rd Cir.1957), where the court ruled that a claim for conversion based upon the Government's resale of property previously sold to the plaintiff stated a claim cognizable under the Federal Tort Claims Act. The Ninth Circuit, in *Woodbury,* specifically distinguishes the reasoning of *Aleutco.* The Ninth Circuit noted that the contract in *Aleutco,* as opposed to the contract in *Woodbury,* was not the essential basis of the plaintiff's claim. In the case *sub judice,* as in *Woodbury,* however, the contractual relationship is the essential basis of the plaintiffs' claim.

The tort alleged here arises from an unsafe condition leading to a personal injury. It is a classic tort. (citation omitted). If the claim arising out of the breach of contract were for expectation damages ... it would be more characteristic of a contractual action.... It would be improper to limit the plaintiff to a purely contract remedy. The cases that require such a limitation ... involve breaches in commercial relationships leading to loss of profit or other purely economic harm.

649 F.2d at 701.

Next in the series of pertinent cases wherein the Ninth Circuit confronted the jurisdictional quandary in this area is *Walsh v. United States,* 672 F.2d 746 (9th Cir.1982). *Walsh* involved a landowner's claim for damages emanating from the Government's negligent maintenance of a cattle guard on an easement road. The import of *Walsh* lies in its recognition of the fact that a claim under the Federal Tort Claims Act can be maintained, regardless of the fact a breach of contract action could be maintained upon the same factual predicate. The court emphasized an injured claimant is not relegated to prosecuting an action under the Tucker Act but is free to pursue either remedy in the alternative.

The Ninth Circuit's most recent consideration of the jurisdictional relationship between the two acts can be found in *Fort Vancouver Plywood Company v. United States,* 747 F.2d 547 (9th Cir.1984). In that case, the Fort Vancouver Plywood Company ("Fort Vancouver") entered into a timber sales contract with the United States Forest Service. After Fort Vancouver's cut was essentially complete but before the timber was removed, a fire, allegedly caused by the negligence of the Forest Service, destroyed both cut and standing timber on Fort Vancouver's sale site. Fort Vancouver filed a negligence action for monetary damages under the Federal Tort Claims Act. The district court, however, dismissed the action for want of subject matter jurisdiction, concluding that Fort Vancouver's claim had its basis in contract rather than tort. 747 F.2d 549.

In reversing the decision of the district court, the Ninth Circuit undertook to review a number of cases (including those discussed in the present memorandum) that addressed the application of the Federal Tort Claims Act to a claim for damages which potentially could have been prosecuted as a breach of contract claim. Recognizing that the contract was implicated only to the extent it established ownership interests in the timber at issue, the court rejected the district court's conclusion to the contrary and concluded Fort Vancouver's claim was tortious in nature. 747 F.2d at 551–52.

A review of the cases discussed is instructive, since it emphasizes the fact that the determination of whether a particular claim is essentially one in tort or one in contract, must be made on a case by case basis by assessing the extent to which the contract is implicated in the claim asserted. The *Woodbury* decision is of particular significance in this regard because it establishes that a claim which is in substance a breach of contract claim and only "incidentally and conceptually" a tort under local or state law, is not brought within the purview of the Federal Tort Claims Act, 313 F.2d at 295. Consequently, when presented with a claim under the Federal Tort Claims Act, which implicates a contractual relationship between the claimant and the Government, the court must evaluate the factual situation presented, and make a determination whether the liability depends wholly upon the Government's alleged promise.

In the case *sub judice,* the Darkos' claim in tort rests upon an implied duty of "good faith" recognized under Montana law as attending their loan agreements with the FmHA. The Darkos' claim is essentially indistinguishable from the claim asserted by the land developer in *Woodbury.* The contractual relationship extant between the Darkos and the FmHA is the essential basis of their claim.

If this court were to allow the Darkos to prosecute their claim under the FTCA, it would be ignoring the distinction between contract and tort preserved in the federal statutes. Realization of the potential for destruction of that distinction, and ultimate subjection of the Government to liability in the manner prescribed by the legislatures and judiciary of the several states, is, of course, what prompted the Ninth Circuit's rationale in *Woodbury*. 313 F.2d at 296. The quote from *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), cited by the Ninth Circuit in *Woodbury* is apropos:

> [The Act] should be construed to fit, so far as will comport with its words, into the entire statutory system of remedies against the Government to make a workable, consistent and equitable whole.

*Id.* at 139.

The alleged liability of the Government to the Darkos "depends wholly upon the Government's alleged promise." *Woodbury*, 313 F.2d at 296. To paraphrase the Ninth Circuit in *Woodbury*, "good faith" duty or not, there can be no liability in this case unless the Darkos can prove (1) an express or implied promise by the Government, through the FmHA, to accept a long term lease arrangement of the mortgaged property and (2) a breach of that promise. Consequently, the court is compelled to conclude that the substance of the Darkos' claim is contractual in nature. Therefore, the Darkos are relegated to prosecuting their claim against the FmHA under the Tucker Act.

For the reasons set forth herein, IT IS HEREBY ORDERED that the present complaint be, and the same hereby is, DISMISSED for want to subject matter jurisdiction.