Thomas Q. NICHOLS and Anna L. Nichols, Plaintiffs,

v.

John R. BLOCK, Individually and in his capacity as Secretary of the United States Department of Agriculture et al., Defendants.

No. CV-83-173-GF.

United States District Court, D. Montana, Great Falls Division.

March 5, 1987.

Joseph W. Duffy, Great Falls, Mont., for plaintiffs.

Carl E. Rostad, Asst. U.S. Atty., Great Falls, Mont., for defendants.

HATFIELD, District Judge.

Thomas and Anna Nichols were loan recipients under the Consolidated Farm and Rural Development Act ("CFRDA") as codified at Title 7, Chapter 50, §§ 1921 *et seq.*, of the United States Code, and administered by the Farmers Home Administration ("FmHA"). This case arises from the allegedly improper handling of the Nichols' loan accounts by the FmHA officials charged with that responsibility. The Nichols contend those officials failed to follow the statutes and administrative regulations governing the administration of such accounts. The Nichols seek monetary compensation for the constitutional and tortious injuries they sustained as a result of the alleged nonfeasance on the part of the FmHA officials involved. The Nichols also seek monetary relief for an alleged breach by the FmHA of the rights secured the Nichols by the Privacy Act of 1974 ("Privacy Act"), 28 U.S.C. § 552a.

The Nichols invoke the jurisdiction of this court pursuant to 28 U.S.C. § 1331, the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680, and the Privacy Act, 28 U.S.C. § 552a(g)(5).

The matter is presently before the court on a consolidated Rule 12(b)(6), Fed.R. Civ.P., motion of the defendants, requesting the court to dismiss the complaint, as amended, upon the ground it fails to state a claim against any of them upon which relief can be granted.

## I. BACKGROUND

During the period of time pertinent to this action, the Nichols owned and operated a farm near Wolf Point, Montana. In 1976, the Nichols obtained a loan from the FmHA to purchase and commence operations of their farm. Subsequently, the FmHA extended additional credit to the Nichols for use in the purchase of livestock and equipment, and otherwise meeting the general operating expenses associated with a modified confinement hog farming operation. In late 1981 economic conditions forced the Nichols to liquidate their hog herd.

The Nichols instituted the present action against the United States, acting through the FmHA, and numerous officials of that entity, both in their official and individual capacities, for damages the Nichols allegedly sustained as a result of the alleged failure of the FmHA officials to abide by the prescriptions of the statutes and regulations governing the application, servicing and collection of loans under the CFRDA.[1] The Nichols assert the nonfeasance of the FmHA officials caused the demise of the Nichols' operation. The Nichols further claim the conduct of the FmHA officials in administering the Nichols' loan accounts violated the Nichols' right to due process of law under the fifth amendment to the United States Constitution. Finally, the Nichols seek monetary compensation for certain of the individual defendants' alleged violation of their right to privacy.

The bulk of the Nichols' complaint, as amended, is directed at the allegedly wrongful conduct of the local officials of the FmHA, charged with the responsibility of administering the Nichols' loan accounts during the period of time pertinent to this action. Specifically, the operative allegations of the complaint are directed solely to the conduct of two county level supervisors, i.e., Walker and Netzer, and the Farmer Program Specialist of the state office of the FmHA during the pertinent period, i.e., Greene. As well as can be ascertained from a less than cohesive complaint, the Nichols are contending these individuals wilfully and/or negligently violated the pertinent statutes and regulations in derogation of the Nichols' constitutional and common-law rights.

The complaint names numerous other FmHA officials charged with administration of the CFRDA loan programs, both at the state and national levels. The document, however, is essentially barren of any substantive factual allegations of wrongful conduct on the part of these superior officials. Rather, the Nichols rely solely upon the doctrine of *respondeat superior* to impose liability upon these superior officials for both the constitutional and common law torts allegedly committed by the local FmHA officials.

With respect to the United States itself, the Nichols invoke the procedural mechanism provided by the Federal Tort Claims Act to impose liability upon the United States for the alleged unconstitutional and tortious conduct of the FmHA officials.[2]

## II. DISCUSSION

### A. *Tort Claims*

It is well settled that the United States, as a sovereign, is absolutely immune from suits unless it has expressly waived its immunity and consented to suit. *United States v. Shaw*, 309 U.S. 495, 500–01, 60 S.Ct. 659, 661, 84 L.Ed. 888 (1940). Waiver cannot be implied, but must be unequivocally expressed. *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23

---

1. The Nichols do not state, with any particularity, the statutes and regulations upon which their claim is predicated. Instead, they generally refer to Title 7, Chapter 50 of the United States Code, and the regulations promulgated by the Secretary of Agriculture under authority of Title 7, as they pertain to loans under the CFRDA. Based upon the allegations of the complaint it appears the Nichols are relying upon the provisions relating to the acceleration of loans under the CFRDA, primarily, those provisions relating to loan deferrals under 7 U.S.C. § 1981a (1980).

2. As an alternate basis for the imposition of liability upon the United States, the Nichols allude to a claim for breach of contract. This court, however, lacks jurisdiction over a claim for breach of contract that exceeds $10,000.00. Since the Nichols' claim clearly exceeds $10,000.00, jurisdiction over a claim for breach of contract would lie with the United States Claims Court. 28 U.S.C. §§ 1346(a)(2) and 1491.

L.Ed.2d 52 (1969). The existence of such consent is a prerequisite for jurisdiction. *United States v. Mitchell,* 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). In accordance with the principle of sovereign immunity, damage actions against the United States for violation of constitutional rights are barred since there is not an explicit waiver of immunity. *See, Bivens v. Six Unknown Named Agents of the Bureau of Narcotics, supra,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (Harlan, J., concurring); *Blackmar v. Guerre,* 342 U.S. 512, 515, 72 S.Ct. 410, 411, 96 L.Ed. 534 (1952); *Clemente v. United States,* 766 F.2d 1358, at 1363–64 (9th Cir. 1985) *cert. denied,* __ U.S. __, 106 S.Ct. 881, 88 L.Ed.2d 917.

■ Sovereign immunity, likewise, bars claims against federal officials in their official capacities unless a waiver of sovereign immunity is unequivocally expressed. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). Accordingly, government officials share in the sovereign immunity of the United States, enjoying absolute immunity from suits for common law torts provided their acts are discretionary and within the outer perimeters of their duty. *See, Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963); *Clifton v. Cox,* 549 F.2d 722, 726 (9th Cir.1977); *Owyhee Grazing Association, Inc. v. Field,* 637 F.2d 694, 697 (9th Cir.1981); *Gray v. Bell,* 712 F.2d 490, 495–497 (D.C.Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984). An official does not necessarily lose his sovereign immunity protection due to a violation of a federal statute or regulation. *Larson v. Domestic and Foreign Commerce Corporation,* 337 U.S. 682, 695, 69 S.Ct. 1457, 1464, 93 L.Ed. 1628 (1949); *United States v. Yakima Tribal Court,* 794 F.2d 1402, 1407 (9th Cir.1986). As stated by the Court of Appeals for the Ninth Circuit in *Aminoil U.S.A., Inc. v. California State Water Resources Control Board,* 674 F.2d 1227 (9th Cir.1982):

> A simple mistake of fact or law does not necessarily mean that an officer of the government has exceeded the scope of his authority. Official action is still action of the sovereign, even if it is wrong, if it "do[es] not conflict with the terms of [the officer's] valid statutory authority...." (citation omitted.)

674 F.2d at 1234. Consequently, there is no *per se* divestiture of sovereign immunity when statutes or regulations are violated while an agent is pursuing his authorized duties.

■ On the other hand, suits that charge federal officials with unconstitutional acts are not barred by sovereign immunity. *Larson v. Domestic and Foreign Commerce Corp.,* 337 U.S. at 690, 696–697, 69 S.Ct. at 1464–65. As noted by the Supreme Court in *Larson,* when a federal official commits an unconstitutional act, he is necessarily acting outside his official capacity. *Id.* Therefore, any claim making such constitutional allegations against a federal official is not barred by sovereign immunity and will be within the jurisdiction of the federal court. *Larson,* 337 U.S. 701–702, 69 S.Ct. at 1467. The claim, however, may be made only against the official and not against the United States, as the official was necessarily acting in his individual capacity and not in his capacity as a government agent. *Id.; see also, Clemente v. United States, supra* at 1363–64.

In accord with the rationale of *Larson* is the landmark decision of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, supra,* wherein the Supreme Court recognized that federal officials may be held liable personally for acts beyond the plain limits of their statutory authority if they wilfully or knowingly violate constitutional rights. *Bivens* establishes that federal officials exercising discretion are divested of their absolute immunity in a suit for damages for injuries due to their unconstitutional acts.

■ In *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), the Supreme Court recognized, however, that in a suit for damages arising from unconstitutional action, a federal executive official exercising discretion is entitled to a qualified immunity. 438 U.S. at 478, 98 S.Ct. 2894, 57 L.Ed.2d 895. This qualified immunity is in the nature of an affirmative

defense and protects an official from liability only if he can show that his actions did not contravene clearly established constitutional rights of which a reasonable person in his position would have known. *See, Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Gray v. Bell, supra,* at 495–497. The standard is the objective reasonableness of the federal official's conduct. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. Thus, federal officials who violate constitutional rights are entitled to immunity if they can prove "that they acted under a *reasonable* (even if mistaken) belief that what they were doing was lawful." *Guerra v. Sutton,* 783 F.2d 1371, 1374 (9th Cir.1986) (emphasis in original) [citing *Bilbrey v. Brown,* 738 F.2d 1462, 1466–67 (9th Cir.1984) ]. The issue in those cases where a federal official claims qualified immunity is whether the law at the time of the alleged unlawful and unconstitutional activity clearly prohibited such conduct. *See, Chilicky v. Schweiker,* 796 F.2d 1131, 1137 (9th Cir.1986).

In the case at bar, the Nichols seek to impose civil liability upon both the individually named FmHA officials and the United States, acting through the FmHA, for the constitutional and common law torts allegedly committed by certain of the named officials. Cognizant of the distinctions between constitutional torts and common law torts with respect to the availability of immunity as a defense, the court must analyze the constitutional claims advanced by the Nichols separately from the claims based on the alleged violations of the pertinent federal statutes and regulations.

 Interpretation of the substantial precedent discussed above, and its application to the allegations advanced by the Nichols, leads the court to two principal conclusions. First, the constitutional claims advanced by the Nichols are not barred by sovereign immunity and lie within the jurisdiction of this court. Those claims, however, may be made only against

the named FmHA officials and not against the United States, as the officials were acting individually and not in their capacity as government agents. Second, those claims of the Nichols which are predicated upon the named FmHA officials' alleged violations of federal statutes and regulations themselves may not be prosecuted against those officials individually, since the officials are immune from liability for action taken in their official capacities.[3] Those alleged violations, however, may serve as the basis upon which to predicate a claim against the United States under the Federal Tort Claims Act, assuming the conduct of which the Nichols complain constitutes a tort cognizable under the Act.

Disposition of the defendants' motion to dismiss requires the court to determine whether the Nichols' complaint, as amended, (1) states a claim against the individual FmHA officials cognizable under the *Bivens* doctrine, and/or (2) states a claim against the United States cognizable under the Federal Tort Claims Act.

### 1. *BIVENS* CLAIM

As indicated, the gist of the Nichols' constitutional claim centers on the contention that the individual federal officials' failure to follow certain federal statutes and regulations served to deprive the Nichols of "property" without due process of law. The property interest claimed by the Nichols is a "legitimate claim of entitlement" to the benefits created by the Farm Credit Act, and the regulations promulgated by the Secretary of Agriculture to implement that Act. Specifically, the operative allegations of the Nichols' complaint, as summarized in their brief in opposition to defendants' motion to dismiss, are as follows:

Plaintiffs have clearly alleged that the "defendants failed to properly service their loans, failed either to apprise them of the availability of limited resource fi-

---

**3.** The court recognizes that where an employee of the United States acts completely outside his governmental authority, he has no immunity. *See, Larson, supra,* 337 U.S. at 689, 69 S.Ct. at 1461; *Dugan v. Rank, supra,* 372 U.S. at 621–22, 83 S.Ct. at 1006–07. There is no allegation in

the case at bar, however, that the named federal officials acted outside the scope of their delegated authority. Consequently, the *ultra vires* exception to sovereign immunity of federal officials is of no consequence in the present case.

nancing (at lower interest rates), or failed to provide them with or offer such financing, failed to grant them rescheduling or deferments of their loan payments (as authorized by statute), failed to properly afford plaintiffs with timely remittance of funds that had been approved and failed to afford them their rights to appeal and review in accordance with the regulations and the Due Process Clause."

It is an elemental principle of constitutional law that property interests are not created by the Constitution. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Rather, as recognized by the Court in *Roth,* property interests are created and defined by existing rules or understandings that stem from an independent source. *Id.* To have a property interest in a benefit a person must have more than a unilateral expectation of receiving that benefit. Instead, he must have a legitimate claim of entitlement to that benefit. *Id.*

The Nichols fail, both in their complaint and their brief in opposition to the defendants' motion to dismiss, to specify, with any particularity, the statutes and regulations upon which they predicate their claim of entitlement. Quoting from the complaint, as amended, the Nichols assert "they are entitled to all rights and benefits established by acts of Congress (including, but not limited to Title 7, Chapter 50, United States Code) and to the benefits, rights and protections afforded persons in plaintiffs' position by the regulations of the Farmer's Home Administration."

In challenging the propriety of the Nichols' constitutional claim, the individual FmHA officials do not challenge the validity of the Nichols' claimed property interest, but apparently acquiesce in the Nichols' proposition that an FmHA loan, once made, creates a statutory entitlement and a property interest protected by the Due Process Clause of the fifth amendment. *See, Johnson v. United States Dept. of Agriculture,* 734 F.2d 774, 782 (11th Cir.1984) [citing *Goldberg v. Kelly,* 396 U.S. 254, 262, 90 S.Ct. 1011, 1017, 25 L.Ed.2d 287 (1970)]. Rather, they proffer three alternate bases in support of their consolidated motions to dismiss the constitutional claims advanced against them by the Nichols.

First, the officials submit that allegations of simple negligence in the implementation of the federal statutes and regulations at issue will not support a constitutional claim under the *Bivens* doctrine. Second, the officials maintain they are entitled to qualified immunity with respect to the constitutional claim advanced against them by the Nichols. Third, those officials occupying supervisory positions, and who did not personally participate in any of the dealings between the FmHA and the Nichols (*i.e.,* defendants Block, Shuman, Moore, Brock, Lund, Davidson, Millegan and Burns), contend they cannot be held vicariously liable for the constitutional torts of their subordinate employees.

Characterizing the Nichols' due process claim as a claim of simple negligence, the individual federal officials submit the alleged tortious conduct of which the Nichols complain is not actionable under the Due Process Clause. The rationale espoused by the Supreme Court in *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), an action under 42 U.S.C. § 1983, of course, establishes that the negligent conduct of state officials acting under color of law will not give rise to a due process "deprivation." *Id.,* at 666. The rationale of *Daniels* is applicable, by analogy, to a *Bivens* action against federal officials. Consequently, to the extent the Nichols seek to impose liability upon the individual FmHA officials for their alleged negligent "deprivation" of the Nichols' right to due process of law, the rationale of *Daniels* would compel dismissal of that portion of their complaint. This conclusion, however, does not terminate the present inquiry.

■ The Nichols not only allege the FmHA officials' conduct was negligent, but that it was intentional. This allegation necessarily precludes reliance upon the *Daniels* rationale. The determinative issue presented by the individual officials' request for dismissal, reduced to its essence, is whether or not they are entitled to a qualified immunity, which would protect them from liability for damages unless it is

further demonstrated that their conduct was unreasonable under the standard established in *Harlow*. Whether the officials may prevail in their defense of qualified immunity depends upon "the objective reasonableness of [their] conduct as measured by clearly established law." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738 (footnote deleted). Accordingly, the defendants' claim of qualified immunity must be subjected to the analysis espoused in *Harlow*, and refined by its progeny, *i.e.*, *Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

Individually named federal officials are entitled to qualified immunity if they can prove that they acted reasonably, and what they were doing was lawful. *See, Harlow v. Fitzgerald, supra; Capoeman v. Reed*, 754 F.2d 1512 (9th Cir.1985); *Guerra v. Sutton, supra.* Where a federal official claims qualified immunity from liability for civil damages emanating from his unconstitutional activity, the issue to be addressed is whether the official's conduct, at the time it occurred, was clearly a violation of the plaintiff's constitutional rights. *See, Chilicky v. Schweiker, supra*, 796 F.2d at 1137–1138. As succinctly stated by the Court of Appeals for the Eighth Circuit in a case essentially identical to the case *sub judice*:

> Where neither the constitutional right nor the constitutional cause of action is expressly created by the terms of a regulation or statute, officials do not forfeit qualified immunity solely by failing to comply with the provisions of that statute or regulation. *Davis v. Scherer*, 468 U.S. 183, 194, 104 S.Ct. 3012, 3019–20, 82 L.Ed.2d 139 (1984); *Freeman v. Blair*, 793 F.2d 166, 173 (8th Cir.1986). Rather, qualified immunity will be forfeited only when at the time of the conduct in question it is clearly established that plaintiffs have the particular constitutional right and that the statutory and regulatory provisions in question bear upon or

implicate that right. *Davis*, 468 U.S. at 193–96, 104 S.Ct. at 3019–21.

*Culbreath v. Block*, 799 F.2d 1248, 1250 (8th Cir.1986).

Subjection of the allegations set forth in the Nichols' complaint to analysis under the *Harlow* standard, compels the conclusion that the individually named FmHA officials are qualifiedly immune from civil liability for the acts of which the Nichols complain. At the time the challenged actions, or inactions, occurred, it was not clearly established that the Nichols were entitled to any preacceleration or preliquidation process. *See, Hagemeier v. Block*, 806 F.2d 197, 201 (8th Cir.1986).

The seminal case recognizing the existence of a constitutional right to preacceleration or preliquidation notice of the right to apply for a loan deferral is *Allison v. Block*, 723 F.2d 631 (8th Cir.1983); a case decided on December 28, 1983. This court shares the opinion posited by the Eighth Circuit Court of Appeals, that prior to the date *Allison* was decided, FmHA borrowers had no clearly established constitutional right to preaccleration or preliquidation notice of the right to apply for a loan deferral. *Culbreath v. Block, supra*, 799 F.2d at 1250.

The action, or inaction, of the individually named FmHA officials upon which the Nichols' claims rest occurred between 1979 and 1981; well prior to December of 1983. Therefore, as held by the court in *Culbreath*, the FmHA officials in the present case could not have reasonably known that the Nichols had a constitutionally protected right to certain preliquidation procedures. 799 F.2d at 1250–51; *see also, Hagemeier v. Block, supra*, 806 F.2d at 201.[4]

■ An alternate basis exists for dismissal of the complaint as against the majority of the FmHA officials. As noted by the court at the outset of its discussion in this matter, the operative allegations of the Nichols' amended complaint are directed solely to defendants Walker, Netzer and

---

**4.** The Nichols allude to the alleged failure of the FmHA officials to apprise them of the availability of additional financing from the FmHA, which the Nichols contend is a due process violation. Applicants for FmHA loans, however, have no constitutionally protected property interest in receiving loans. *DeJournett v. Block*, 799 F.2d 430, 432 (8th Cir.1986).

Green. Nonetheless, the Nichols seek to impose liability upon the remaining federal officials via the doctrine of *respondeat superior*. The doctrine of *respondeat superior*, however, is unavailable in *Bivens'* actions to impose liability on superiors and, hence, the United States for the constitutional torts of subordinate employees. *See, Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (action under 42 U.S.C. § 1983). On this alternate basis, the court finds that the Nichols' complaint fails to state a constitutional claim against the following individually named federal officials: John R. Block, Charles W. Shuman, George T. Moore, H. Allen Brock, Arthur E. Lund, Dean C. Davidson, Roy E. Millegan and Billie Burns.[5]

## 2. CLAIMS UNDER THE FEDERAL TORT CLAIMS ACT[6]

 The Federal Tort Claims Act does not constitute a waiver of the sovereign immunity of the United States with respect to federal constitutional torts. *See, Laswell v. Brown*, 683 F.2d 261, 268 (8th Cir.1982); *Jaffee v. United States*, 592 F.2d 712, 717–18 (3rd Cir.1979), *cert. denied*, 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979); *Birnbaum v. United States*, 588 F.2d 319 (2nd Cir.1978); *contra, Black v. Sheraton Corp. of America*, 564 F.2d 531, 539–40 (D.C.Cir.1977). The Federal Tort Claims Act (28 U.S.C. §§ 1346(b) and 2671–2680) does, however, waive the sovereign immunity of the United States with respect to claims for money damages based upon injury or loss of property caused by the negligent or wrongful act or omission of a federal employee acting within the scope of his employment. *Laird v. Nelms*, 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972). The liability of the United States under the Act, however, is determined "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Therefore, any finding of liability must be based upon local tort law. *United States v. Muniz*, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963).

The Nichols seek to impose liability upon the United States for both the alleged constitutional and common-law tortious conduct of the individually named FmHA officials. Sovereign immunity, as the precedent discussed establishes, precludes the Nichols from imposing liability upon the United States for any violation of the Nichols' federal constitutional rights which the conduct of the individually named FmHA officials may have entailed. The United States may only be held liable under the Federal Tort Claims Act for the alleged common-law tortious conduct of the individually named FmHA officials.

The Nichols' claim against the United States is premised upon the contention that Chapter 50, Title 7 of the United States Code, as it pertains to FmHA loans, and the regulations promulgated by the Secretary of Agriculture thereunder, imposes certain obligations upon the FmHA, a breach of which is compensable in tort. The Nichols are not specific as to the precise statutes upon which they rely, but refer in general to their purported rights of "management assistance," "deferral or moratorium," "additional financing" and "limited resource borrowing." The alleged failure of the FmHA officials to abide by the pertinent statutes and regulations, the Nichols submit, constitutes negligence on the part of the FmHA, cognizable under the Federal Tort Claims Act. The court disagrees.

 The court begins its analysis by taking proper cognizance of the well established principle that the violation of a federal statute or administrative regulation by

---

5. The court notes that individual defendants Richard Hall and Richard Nayes, while not supervisory personnel, are entitled to dismissal of the constitutional claims advanced against them by the Nichols, since no allegation of wrongful conduct are alleged against them. Consequently, the Nichols' complaint, as amended, fails to state a claim against these two individuals upon which relief can be granted.

6. The Nichols name the FmHA as a defendant. The FmHA, an unincorporated department of the federal government, however, is not a legal entity and cannot be sued *eo nominee*. *Owyhee Grazing Assoc., Inc. v. Fields, supra*, at 697. Any claim predicated upon the conduct of the FmHA must be brought against the United States. The Nichols' suit against the FmHA, as an entity, must be dismissed.

an agency of the United States does not, standing alone, create a cause of action under the Federal Tort Claims Act. *See, Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980); *United Scottish Insurance Co. v. United States,* 614 F.2d 188, 194 n. 4 (9th Cir.1979), *aff'd after remand,* 692 F.2d 1209 (9th Cir.1982), *rev'd on other grounds,* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984); *Younger v. United States,* 662 F.2d 580, 582 (9th Cir. 1981). This principle is premised upon the fact, that the Federal Tort Claims Act, being procedural as opposed to substantive in nature, does not create new causes of action, but serves to make the United States liable in accordance with local tort law. 28 U.S.C. § 1346(b); *see, Art Metal-U.S.A., Inc. v. United States,* 753 F.2d 1151 (D.C.Cir.1985). Any finding of liability under the Act must be based upon state law. *United States v. Muniz, supra; Brock v. United States,* 601 F.2d 976, 979 (9th Cir.1979).

Consistent with the foregoing principle, any duty the FmHA owed the Nichols cannot be founded upon federal statutes and regulations. Rather, the source of the duty must be Montana law. *See, Lutz v. United States,* 685 F.2d 1178, 1184 (9th Cir.1982) (citing *Younger v. United States, supra,* and *United Scottish Insurance Co. v. United States, supra* ). As stated by the Ninth Circuit in *Lutz:*

> The federal statute or regulation under which an employee acted only becomes pertinent when a state law duty is found to exist. The federal statute or regulation may then provide the standard for reasonable care in exercising the state law duty. (citations omitted.)

685 F.2d at 1184.

Proper analysis, then, requires the court to proceed with a determination of whether a cause of action exists under the laws of the State of Montana for the injuries allegedly sustained by the Nichols. *See, Carlson v. Green, supra,* 446 U.S. at 23, 100 S.Ct. at 1474.

The United States argues, in essence, that no duty exists under Montana law analogous to the obligation imposed upon the FmHA by Chapter 50 Title 7 and the regulations promulgated thereunder. Con-sequently, the United States submits, the "private person" liability required by Section 1346(b) is lacking.

The Nichols fail to point to the existence of a specific duty under Montana law analogous to the obligation imposed upon the FmHA by the statutes and regulations at issue. The Nichols do, however, allude to the fact that under Montana law a duty of "good faith" is recognized as attending commercial contracts. While this court is cognizant of the existence of such a duty under Montana law, it has rejected the proposition that jurisdiction exists under the Federal Tort Claims Act with respect to claims advanced against the United States for breach of the duty of "good faith" attending commercial contracts in Montana. *See, Darko v. United States,* 646 F.Supp. 223 (D.Mont.1986) [relying upon *Woodbury v. United States,* 313 F.2d 291 (9th Cir.1963) ]. Rather, jurisdiction over such a claim lies within the ambit of the Tucker Act (28 U.S.C. §§ 1346(a)(2), 1491), since the claim implicates the contractual relationship between the claimant and the United States. *Darko v. United States, supra.*

Assuming the Nichols' allegations are viewed as sufficient to raise the proposition that violation of the federal statutes and regulations renders the United States liable since it undertook a so-called "good-samaritan" activity, the court finds the attempt to impose liability under this theory to be ill fated.

Where the United States undertakes a particular activity pursuant to the directive of a federal statute or regulation, liability under the Federal Tort Claims Act for the negligent performance of that activity is not automatic. *See, United Scottish Insurance Co. v. United States, supra,* 614 F.2d at 193. In *Indian Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), the Supreme Court ruled, however, that liability could be imposed upon the United States in accordance with the "good samaritan" doctrine. *Indian Towing* establishes that the United States may be liable under the Federal Tort Claims Act for the negligent provision of

services upon which the public has come to rely. 350 U.S. at 64–65, 76 S.Ct. at 124.

Consistent with the requirement of the Federal Tort Claims Act that governmental liability may not be determined without considering the liability of a private person in "like circumstances" pursuant to relevant state law, liability may be imposed under the "good samaritan" doctrine only if the applicable state law requirements of the doctrine are satisfied. *United Scottish Insurance Co. v. United States, supra,* 614 F.2d at 195–196. Therefore, when a claimant seeks to impose liability upon the United States via the "good samaritan" doctrine, the court must determine whether the pertinent state has adopted the doctrine, and whether the requirements of the doctrine are satisfied in the particular case.

Montana has long recognized the common law tort embodied in the "good samaritan" doctrine as currently set forth in Section 323 of the *Restatement (Second) of Torts (1965). See, Vesel v. Jardine Mining Co.,* 110 Mont. 82, 100 P.2d 75 (1940); *Jeffries v. United States,* 477 F.2d 52 (9th Cir.1973); *Trombetta v. United States,* 613 F.Supp. 169 (D.Mont.1985). Section 323 provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or, (b) the harm is suffered because of the other's reliance upon the undertaking.

However, the allegations of the Nichols' amended complaint, taken as true, do not state a claim cognizable under the "good samaritan" doctrine as recognized under the laws of Montana. The Nichols fail to allege the FmHA rendered a service which was necessary for the protection of the Nichols' property; a service which if performed negligently may well result in injury. Rather, the thrust of the complaint is that the Nichols were denied certain types of financing arrangements, and deferral or moratorium of payments allegedly available under the pertinent federal statutes and regulations. Based upon the Nichols' characterization of the statutes and regulations upon which their claim is predicated, the duties imposed by those statutes and regulations were designed to protect a borrower's due process right from arbitrary, capricious and/or unfair conduct on the part of the FmHA officials. But these constitutional rights are guaranteed under federal, not local law. *See, Art Metal-U.S.A., Inc. v. United States, supra,* 753 F.2d at 1156–60; *see also, Tuepker v. Farmers Home Admin.,* 538 F.Supp. 375 (D.C.Mo.1982), *affirmed,* 708 F.2d 1329 (8th Cir.1983).

The FmHA's alleged violation of the due process rights purportedly guaranteed the Nichols by the statutes and regulations to which they allude, is simply not remediable under the Federal Tort Claims Act, since no analogous duty exists under the law of Montana. As noted by the D.C. Circuit Court of Appeals in *Art Metal,* the prescriptions of the Federal Tort Claims Act cannot be circumvented by the simple expedient of drafting, in terms of negligence, a complaint which in reality is a claim as to which the United States remains immunized. 753 F.2d at 1160 [citing *Johnson v. United States,* 547 F.2d 688, 691–92 (D.C.Cir.1976)].

Accordingly, the Nichols' complaint as against the United States must be dismissed for failure to state a claim cognizable under the Federal Tort Claims Act.

### 3. PRIVACY ACT CLAIM

The United States has expressly waived its sovereign immunity to damage actions under the Privacy Act. *See, Rosen v. Walters,* 719 F.2d 1422 (9th Cir.1983). The Privacy Act, however, creates a right of action only against the federal agency involved; the civil remedy provisions being inapplicable to individual governmental officials. *UNT v. Aerospace Corp.,* 765 F.2d 1440 (9th Cir.1985).

By way of Count IV of their complaint, the Nichols advance a claim under the Privacy Act, predicated on the alleged disclo-

 

sure of confidential information contained in the records maintained by the FmHA in relation to the Nichols' loan accounts. Specifically, the Nichols allege defendants Burns, Netzer and Hall did "wilfully and intentionally release, by way of loud and boisterous conversation" in a public place, information concerning the Nichols' financial affairs. In addition, the Nichols allege that sometime in 1980 through 1981, defendant Netzer provided false information pertaining to the Nichols' financial condition to third persons. In general and conclusory fashion, the Nichols state that they have suffered damages as a result of the alleged disclosure of the information contained in the FmHA's records.

The United States moves the court to dismiss Count IV of the Nichols' complaint upon the ground it fails to state a claim under the Privacy Act. Conceding, for purposes of argument, the truth of the Nichols' allegations, the United States submits the Nichols have failed to allege the FmHA disclosed a "record" within the meaning of section 552a(a)(4). In that regard, the United States argues the information at issue was not retrieved from a "record contained in a system of records" maintained by the FmHA, but that the individual officials acquired the information from personal observation or knowledge obtained from sources independent of the records of the FmHA.

█ Whether the information at issue was retrieved from a "record" protected by the Privacy Act, or was but an opinion based upon personal observation, is an issue of fact. The Nichols, however, apparently do not contest the position of the United States. In that regard, the court noted Rule 220–1, Rules of Procedure of the United States District Court for the District of Montana, requires a party adverse to a particular motion to respond to that motion within ten (10) days of service. Rule 220–1 provides that a lack of response is to be deemed an admission that, in the opinion of counsel for the adverse party, the motion is well taken. While the Nichols filed a brief in response to the motion of the United States, the brief does not address the Privacy Act claim. The foregoing admission, coupled with the vague and conclusory allegations of the complaint, compels the court to grant the motion of the United States requesting the court to dismiss Count IV of the Nichols complaint upon the ground that it fails to state a claim under the Privacy Act.

An appropriate order shall issue.